OPINION
[¶ 1] Defendant-appellant, James Sutton, appeals from the judgment of the Mahoning County Court of Common Pleas finding him guilty of possession of cocaine, illegal manufacturing of drugs and having a weapon while under disability.
[¶ 2] On November 6, 2000, Officers Jeff Solic and Mark Skowron of the Austintown Police Department responded to a call by the apartment manager of the Fountain Square Apartments in Austintown, Ohio that a tenant was suspected of smoking marijuana. Upon their arrival, a security officer escorted the officers to appellant's door. Appellant opened the door. The officers notified appellant as to why they were present. In an effort to preserve privacy, the officers asked appellant whether he would prefer to discuss the matter inside of his apartment, as opposed to in the hallway. Appellant granted the officers access to the apartment and subsequently admitted to smoking marijuana. Appellant apologized for his disturbance of the neighbors, telling the officers he would place a rag under the door during future usages of marijuana in order to prevent the neighbors from being disturbed. The officers asked appellant whether he was the only individual present in the apartment and he replied that he was alone. However, appellant's verbal response was contradicted by his actions, as "he looked nervously toward the bedroom area." (Tr. 12).
[¶ 3] The officers advised appellant they were going to conduct a protective sweep of the area to confirm his response. Officer Solic first checked the lighted bathroom, followed by the dark bedroom area. The officer noticed a bag of marijuana on the bed. The officers then asked appellant if they could search for additional narcotics. He responded in the affirmative. Officer Solic began searching the bedroom and closet area. He located cigar tobacco and wrappers in appellant's trashcan, a .22 revolver in a lidded shoebox, a shaving case containing a digital scale, and a tube device used for making crack cocaine, with cocaine residue.
[¶ 4] Appellant then informed the officers that he was unsure if he wanted them to continue with their search. The officers stopped the search in order to inquire as to appellant's desires. The officers advised appellant it was his decision as to whether or not the search should be stopped. Appellant instructed the officers to finish the search. The officers continued the search and located suspected crack cocaine. The officers subsequently presented appellant with a consent-to-search form. Appellant refused to sign, but again indicated his oral consent to search the residence. The officers then located drug paraphernalia.
[¶ 5] Appellant was arrested and later indicted on one count of possession of cocaine, a violation of R.C. 2925.11(C)(4)(e); one count of illegal manufacturing of drugs, a violation of R.C. 2925.04(A)(C)(2); and one count of having a weapon while under a disability, a violation of R.C. 2923.13(A)(3)(c). Appellant filed a motion to suppress on March 6, 2001 alleging the officers violated his Fourth and Fourteenth Amendment rights by the unlawful entry and search of his apartment. The trial court overruled appellant's motion to suppress after a hearing on May 1, 2001. Appellant subsequently changed his plea from not guilty to no contest and the court found him guilty of the charges in the indictment. The trial court sentenced appellant to a prison term of five years for possession of cocaine, five years for illegal manufacturing of drugs, and 11 months for having a weapon while under disability to be served concurrently. The court also ordered appellant to pay a mandatory fine of $17,500.00. Appellant filed his timely notice of appeal on October 5, 2001.
[¶ 6] Appellant raises two related assignments of error; therefore, we will address them together. They state:
 [¶ 7] "THE TRIAL COURT ERRED, TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT/APPELLANT, IN OVERRULING HIS MOTION TO SUPPRESS, THUS VIOLATING HIS RIGHTS UNDER THE 4TH AND 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND SECTIONED [sic.] 14 AND 10, ARTICLE 1 OF THE OHIO CONSTITUTION."
 [¶ 8] "THE TRIAL COURT ERRED IN FINDING THAT THE DEFENDANT-APPELLANT GAVE CONSENT TO SEARCH HIS APARTMENT, FAILING TO APPLY THE `CLEAR AND POSITIVE EVIDENCE' TEST WHICH IS THE CORRECT STANDARD IN DETERMINING WHETHER CONSENT WAS FREELY AND VOLUNTARILY GIVEN."
 [¶ 9] Appellant argues that the officers violated his Fourth andFourteenth Amendment rights in conducting a warrantless search of his apartment. He asserts that he never gave the officers permission to enter his apartment nor to conduct a protective sweep. Appellant argues that his actions when the police came to his door and his alleged consent were not sufficient to establish he was waiving his Fourth Amendment rights. Appellant asserts that where police make a show of authority sufficient to communicate to a reasonable person in his position that he is not free to leave, there is effectively a seizure of that person. Citing, State v.Ingram (1992), 82 Ohio App.3d 341. Appellant contends plaintiff-appellee, the state of Ohio, failed to prove that the officers who came to his apartment obtained his consent to search freely and voluntarily. He claims the officers attained his consent by coercion and implied force. He also notes that he never signed a consent-to-search form.
[¶ 10] This court's standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Lloyd (1998),126 Ohio App.3d 95, 100; State v. Winand (1996), 116 Ohio App.3d 286,288, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608. Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521,548, quoting State v. Venham (1994), 96 Ohio App.3d 649, 653. As a reviewing court, this court must defer to the trial court's factual findings and the trial court's assessment of witness credibility. Statev. Brown (Sept. 7, 1999), 7th Dist. No. 96-B-22, citing State v.Anderson (1995), 100 Ohio App.3d 688, 691. However, once this court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. Statev. Williams (1993), 86 Ohio App.3d 37, 41, overruled on other grounds as stated in Village of McComb v. Andrews (Mar. 22, 2000), 3rd Dist. No. 5-99-41.
[¶ 11] The trial court made the following factual findings. Officer Solic received a phone call from the apartment manager regarding a complaint from one of the tenants in the apartment complex about the smell of marijuana. Officers Solic and Skowron responded to the call where a security officer escorted them to the apartment with the odor of marijuana. The officers knocked on the door and appellant opened it. Appellant identified himself as James Elliot. The officers advised appellant that one of his neighbors complained about the smell of marijuana coming from his apartment. The officers asked appellant if they could step inside the apartment so his neighbors would not know his business. Although appellant did not verbally respond, he stepped back and opened the door all the way. The officers entered the apartment believing appellant's actions constituted an invitation to enter. Appellant admitted he was smoking marijuana in the apartment, apologized for the inconvenience, and told the officers next time he would place a rag under the door.
[¶ 12] The officers asked appellant if anyone else was present in the apartment, to which he responded "no." However, appellant looked nervously back over his shoulder toward a lighted bathroom. Based on appellant's actions, Officer Solic believed someone else was present in the apartment who might pose a danger to the officers. Officer Solic then informed appellant that he was going to conduct a quick protective sweep for their safety. He looked in the bathroom and did not see anyone. He then proceeded to the bedroom, which was not lit, and shined his flashlight across the room. Officer Solic observed a baggy of marijuana on the bed. He also smelled the odor of marijuana throughout the apartment. Officer Solic retrieved the baggy of marijuana.
[¶ 13] Officer Solic next asked appellant if there were any other drugs on the premises, to which appellant responded, "you won't find any." Officer Solic then asked appellant if he could look around. Appellant responded that it was okay. Officer Skowron began to write a summons for the marijuana violation while Officer Solic began to search. Officer Solic found some cigar wrappers and tobacco in the bedroom wastebasket. He then found some documents in a shoebox that identified appellant as James Sutton, not James Elliot, as he had identified himself. Along with the documents, Officer Solic found a loaded .22 revolver. Officer Solic then found a digital scale with what appeared to be cocaine residue on it in a shaving bag. At this point, Officer Skowron escorted appellant into the bedroom. Officer Skowron told Officer Solic that appellant had informed him that he had a gun in his bedroom. He also informed Officer Solic that appellant was now unsure whether he wanted the officers to continue with their search. Officer Solic told appellant he had to tell them one way or the other they could or could not continue the search. Appellant told the officers to continue. Officer Solic then found a baggy in the closet with what appeared to be crack cocaine. In the meantime Officer Skowron had learned there were outstanding warrants for James Sutton. Officer Solic then asked appellant to sign a consent-to-search form, which he refused. The officers subsequently arrested appellant.
[¶ 14] The trial court concluded that appellant granted the officers permission into the apartment by his actions. It stated the evidence found in plain view during the protective sweep could be used against appellant. Finally, the court concluded appellant freely consented to the officers' search of the premises and his refusal to sign the consent-to-search form did not obviate his previously given oral consent.
[¶ 15] After reviewing the transcript of the suppression hearing, it is clear that the trial court's factual findings are supported by competent, credible evidence. Officer Solic was the only witness to testify and his testimony supports each of the trial court's findings of fact. Therefore, we must independently determine whether the trial court met the applicable legal standard.
[¶ 16] The Fourth Amendment protects citizens from unreasonable searches and seizures. Maryland v. Buie (1990), 494 U.S. 325, 331. Warrantless searches are per se unreasonable unless they fall within an exception to a search warrant. Katz v. U.S. (1967), 389 U.S. 347, 357. Whether the trial court should have suppressed the evidence recovered from appellant's apartment based on a warrantless search depends on our answers to three questions: (1) Did the officers have permission to enter appellant's apartment; (2) Did the officers have the authority to conduct a protective sweep once they were inside the apartment; and (3) Did the officers have appellant's valid consent to conduct a warrantless search of his apartment. We will address each question separately.
[¶ 17] As to the first issue, the officers did have appellant's permission to enter his apartment. Courts have held that a person can demonstrate consent to enter either expressly or impliedly, in ways such as opening a door and stepping back, or leading an officer through an open door and not expressing that he should not follow. State v.Schroeder (Oct. 26, 2001), 6th Dist. No. WD-00-076; State v. Asworth
(Apr. 11, 1991), 10th Dist. No. 90AP-916. The voluntary opening of a door constitutes voluntary consent to step into the threshold of the apartment. State v. Scott M. (Oct. 22, 1999), 6th Dist. No. E-98-065, E-98-066; State v. Robinson (1995), 103 Ohio App.3d 490, 495.
[¶ 18] In the present case, the officers knocked on appellant's door and appellant answered it. (Tr. 9). The officers identified themselves as police officers with the Austintown Police Department and advised appellant they were investigating a call from one of his neighbors who complained of the smell of marijuana coming from his apartment. (Tr. 10). Appellant informed the officers he resided at the apartment. (Tr. 12). The officers then asked appellant if they could step inside so his neighbors would not know his business. (Tr. 12). Appellant then opened the door fully and stepped backwards into his apartment. (Tr.12). The officers entered the apartment. (Tr. 12). Appellant's actions clearly demonstrated his consent to the officers entering the threshold of his apartment. His conduct was that of one offering an invitation of entry into the apartment. Had appellant not wanted the officers to enter the apartment, he could have just as easily stepped outside the doorway and shut the door. Officer Solic did indicate that appellant answered the door clad only in a bath towel, thus he may not have wished to enter the hallway in such apparel. However, appellant could have asked the officers to wait in the hall while he dressed himself. He chose not to do so. The act of opening the door completely and stepping back into his residence constituted an invitation to enter. Thus, the officers acted properly in entering the threshold of the apartment.
[¶ 19] Next, we will consider whether the officers had the authority to conduct a protective sweep, in which they discovered the baggy of marijuana, once they were inside the apartment. Police officers may conduct a protective sweep when there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie,494 U.S. at 334. Officer Solic articulated several facts that would lead a reasonably prudent officer to believe someone posing danger might have been in the apartment. Officer Solic testified that after appellant admitted he had been smoking marijuana, he asked appellant if anyone else was in the apartment whom the officers needed to be concerned about. (Tr. 14). Appellant responded "no." (Tr. 14). However, appellant nervously looked back over his shoulder into the area of the bathroom and bedroom. (Tr. 14). Officer Solic also noticed a light on in the bathroom area. (Tr. 14). Additionally, appellant informed the officers that his aunt was the lessee of the apartment, which led Officer Solic to believe that at least one other person had access to the apartment. (Tr. 39). He testified that these facts made him believe someone else was in the apartment. (Tr. 14, 39). Officer Solic then advised appellant that for his and Officer Skowron's safety, he was going to do a quick protective sweep. (Tr. 15). Under the circumstances, Officer Solic had a reasonable belief that he needed to conduct a protective sweep for his and Officer Skowron's safety.
[¶ 20] Officer Solic proceeded with the protective sweep of the bathroom and bedroom. When he scanned the bedroom with his flashlight, Officer Solic noticed a baggy of marijuana in the middle of the bed. (Tr. 16). The marijuana had a street value of five to ten dollars and its possession constituted a minor misdemeanor. (Tr. 43). Officer Solic properly seized this evidence because it was in plain view. Under the plain view doctrine, if law enforcement officers are where they have a legal right to be, they may seize evidence which is contraband and in plain view. Arizona v. Hicks (1987), 480 U.S. 321, 326. Since it was proper for Officer Solic to conduct a protective sweep, it was also proper for him to seize the marijuana that was in plain view on the bed.
[¶ 21] Finally, we must consider whether Officer Solic's warrantless search was conducted with appellant's consent thus negating the need to obtain a warrant. One of the exceptions to a warrant is where a search is conducted pursuant to consent. State v. Ludington (Aug. 28, 2000), 7th Dist. No. 99 CO 13; Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219. "To rely on the consent exception of the warrant requirement, the state must show by `clear and positive' evidence that the consent was `freely and voluntarily' given." State v. Posey (1988), 40 Ohio St.3d 420, 427, quoting Bumper v. North Carolina (1968), 391 U.S. 543, 548. Clear and positive evidence is not significantly different from clear and convincing evidence, which is the amount of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations to be proved. Ingram, 82 Ohio App. at 346.
[¶ 22] Whether the defendant gave consent voluntarily, as opposed to being coerced or placed under duress, is a question of fact to be determined by the totality of the circumstances. Ludington, 7th Dist. No. 99 CO 13; Schneckloth, 412 U.S. at 227. "It has been recognized that even the existence of subtle coercion may flaw a person's judgment, inhibit free choice and invalidate consent. United States v. Watson (1976),423 U.S. 411, 424; Schneckloth, 389 U.S. at 227 (holding that duress and coercion can be implied). Account should be taken of the possibility of a vulnerable subjective state of the accused. Schneckloth, 389 U.S. at 229. The court should also weigh the officer's need to seek consent to search a home against a citizen's right to privacy within that home." Ludington, 7th Dist. No. 99 CO 13.
[¶ 23] Regarding appellant's consent, Officer Solic testified that after he found the marijuana in plain view on the bed and informed appellant of such he asked appellant if there were any other narcotics in the apartment. (Tr. 16). Appellant told Officer Solic, "no you won't find anything." Officer Solic then asked if he could look to confirm that there were no other drugs in the residence. (Tr. 17). Appellant responded, "yeah, it's okay. Go ahead and look, if you want." (Tr. 17). Thus, oral consent was established. At this point Officer Skowron escorted appellant into the dining area to conduct a warrant check and issue a summons for the marijuana. (Tr. 17).
[¶ 24] Officer Solic searched the bedroom and found some cigar wrappers and tobacco in the wastebasket, which can be used for smoking marijuana. (Tr. 18). He also searched the closet and found a loaded .22 revolver in a shoebox, a digital scale with what appeared to be cocaine residue and a test tube device also containing the white residue in a bag. (Tr. 18-19). After Officer Solic found these items, Officer Skowron escorted appellant into the bedroom and advised Officer Solic that appellant was unsure of whether he wanted the search to continue. (Tr. 19). At this time, Officer Solic stopped his search and advised appellant that it was his decision whether to allow the search to continue. (Tr. 19). Officer Solic stressed to appellant that he had to make a decision one way or the other on whether to allow the search to continue. (Tr. 20). Appellant shrugged his shoulders and said, "no, it's okay. It's okay, go ahead." (Tr. 20). Hence, appellant gave his consent a second time. Officer Solic resumed his search. He located a baggy containing two large rocks of crack cocaine in the closet. (Tr. 20). Officer Solic then learned that appellant had outstanding arrest warrants and informed appellant of what he had found. (Tr. 21). Officer Solic then presented appellant with a consent-to-search form and explained it to him but appellant refused to sign it. (Tr. 21). Although he refused to the sign the form, appellant told the officers they could finish the search, resulting in a third grant of verbal consent. (Tr. 21). Officer Solic then searched the kitchen and located some drug paraphernalia. (Tr. 21-22).
[¶ 25] Appellant presented no evidence that his consent was not voluntary other than the fact that he refused to sign the consent to search form. It is important to note we have at least three occasions where appellant granted the officers permission to search the apartment via oral consent, two of which occurred before appellant refused to sign the consent-to-search form. Appellant was aware of what Officer Solic was searching for since Officer Solic asked if he could search to make sure there were no other drugs in the apartment. Appellant also demonstrated his awareness that he was not required to consent when he informed Officer Skowron he was unsure if he wanted the search to continue. At this point, Officer Solic stopped his search and told appellant he had to either grant or deny his permission to search, thus making appellant completely aware of his options. Based on the totality of the circumstances, competent evidence exists to demonstrate appellant's consent was fully and voluntarily given.
[¶ 26] As stated previously, this court must defer to the trial court's factual findings and then independently determine whether the trial court met the appropriate legal standard. After considering both the trial court's factual findings and the legal standards surrounding consent and warrantless searches, we conclude that the trial court met the applicable standard. Accordingly, appellant's assignments of error are without merit.
[¶ 27] For the reasons stated above, the decision of the trial court is hereby affirmed.
Judgment affirmed.
Waite and DeGenaro, JJ., concur.