The STATE of Ohio, Appellant,

v.

INGRAM, Appellee.

[Cite as *State v. Ingram* (1992), 82 Ohio App.3d 341.]

Court of Appeals of Ohio,
Clark County.

No. 2893.

Decided Aug. 26, 1992.

*Stephen C. Collins,* Assistant Prosecuting Attorney, for appellant.
*Noel E. Kaech,* Assistant Public Defender, for appellee.

FAIN, Presiding Judge.

The state of Ohio appeals, pursuant to Crim.R. 12(J), from an order of the Court of Common Pleas of Clark County granting defendant-appellee Herbert

K. Ingram's motion to suppress evidence obtained from a warrantless search of his person. The state contends that Ingram voluntarily consented to the search. The trial court found that: (1) there was a sufficient show of authority that Ingram was effectively seized, finding that "obviously, the officers would have kept him from leaving if he had attempted to leave at that time"; (2) the officers had no reasonable grounds to stop Ingram on private property in such a manner as to precipitate his volunteering to be searched; and (3) the consent was not voluntary under the circumstances. Because the voluntariness of consent is an issue upon which the state bears the burden of proof by clear and convincing evidence, and because we cannot say that the trial court's finding is against the manifest weight of the evidence, we affirm the decision of the trial court.

I

On the morning of August 23, 1991, Officers Fair and Kisaberth of the Springfield Police Department were dispatched to 634 W. Grand in Springfield. Officer Fair had been with the Springfield police about twenty-six years, and Officer Kisaberth had been with the police about twenty-seven months.

The dispatch was based on an anonymous tip that a Black male, dressed in light blue shorts, dark T-shirt, and a ball cap, was selling drugs in the area of 634 W. Grand. There was no indication of the basis of the knowledge of the informant and no indication of the reliability of the informant. In addition to the dispatch, Officer Fair was aware of a bulletin that had come in three or four days previously that a local bank owned the property at 634 W. Grand and was concerned about vandalism. The purpose of the bulletin was to alert police to observe the property and to arrest anyone they caught vandalizing the house. The bank also expressed its suspicion that crack cocaine was being sold from the house. No evidence of the basis of the bank's suspicion of crack sales was provided.

When the officers arrived at the house, they saw Ingram sitting on the front steps of the porch, drinking fruit juice. Fair testified that it was an open porch, about an eight by ten feet; Kisaberth testified that it was an L-shaped porch. Both officers testified that it had railings at the time of the suppression hearing, but Fair indicated that it had no railings on August 23, and Kisaberth did not remember whether it had railings then or not. Ingram was wearing blue shorts, a dark T-shirt, and a ball cap.

The officers approached Ingram; Fair stopped directly in front of him on the walkway, and Kisaberth was slightly to Fair's side, in the yard, both fairly close to Ingram. Both officers were in uniform and armed. Fair asked

Ingram what he was doing there, and Ingram replied, "Waiting for someone." Fair asked him his name, date of birth, Social Security number, and he answered accurately. Ingram then asked why they wanted to know; Fair responded that they had been dispatched there because someone was selling crack. Fair testified that Ingram "threw up his hand and stood up and says, 'Not me, man. I don't do that stuff. Search me, man.'" At that point, Fair patted him down, and Kisaberth asked for his hat, which Ingram handed over. Kisaberth found a rock in the lining of the cap, which later tested positive for cocaine.

The officers placed Ingram under arrest for possession of cocaine in violation of R.C. 2925.11. Ingram moved to suppress the evidence; the trial court granted the motion. The state appeals pursuant to Crim.R. 12(J).

## II

The state's sole assignment of error is as follows:

"The trial court erred in granting defendant's motion to suppress were [sic] there was not [a] Fourth Amendment violation, and where defendant freely and voluntarily consented to a search of his person."

The state framed the first issue presented for review as whether the trial court erred in holding that there was a Fourth Amendment seizure of Ingram. The state argues that the show of authority by the police was not sufficient to have communicated to a reasonable person in Ingram's position that he was not free to terminate the encounter with the officers.

## A

Whether there was a show of authority sufficient to communicate to a reasonable person in Ingram's position that he was not free to leave was a factual determination for the trial court to make. *Florida v. Bostick* (1991), 501 U.S. ——, ——, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389, 401–402:

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. That rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus."

The trial court in the present case made that determination, stating that "obviously" the officers would not have allowed Ingram to leave. The evidence relating to the show of authority includes the facts that the officers,

in uniform and carrying weapons, approached Ingram on private property, standing close to him. While the record does not reflect exactly how close the officers were, Officer Kisaberth testified on that point as follows:

"Q. Okay. When the two of you approached Mr. Ingram, how far from him were you standing when you started this conversation?

"A. Several feet.

"Q. Okay. Closer than you and I or about the same distance?

"A. Closer. Closer than that even.

"Q. Okay. Like this?

"A. Yes, sir.

"Q. And as I understand it, and correct me if I'm wrong, but if I understand, Officer Fair was almost directly in front of him and you were in the yard to one side of Officer Fair. Would that be a correct representation?

"A. Yes.

"Q. Okay. But you were close, fairly close to him at the time you were having that conversation.

"A. Yes."

Officer Fair had testified earlier that he was standing about four feet from Ingram, and on being re-called he testified that he was about the same distance as indicated by Officer Kisaberth. How close they were is not, of course, reflected in the printed record. Ingram was not on public property or in a public place, but was on private property, sitting on a small railed[1] porch, waiting for someone; his way was blocked so that he could not exit to the street. Ingram had been told that he was suspected of selling crack cocaine. With the exception that Ingram was on private property instead of being in a public place, these facts are similar to those in *Florida v. Royer* (1983), 460 U.S. 491, 496, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229, 235. Ingram was not told that he had the right to refuse to answer questions. Unlike the trial court, we have not seen or heard the testimony of the officers. While this record may have supported a contrary finding that Ingram was not seized, in considering the totality of the circumstances, and keeping in mind the deference that an appellate court must give to a trial court's determination of the credibility of the witnesses and the proper construction to be placed upon testimony that may be subject to interpretation, especially where the record is somewhat

---

1. The officers testified that the porch was railed at the time of the suppression hearing, and the trial court could have disbelieved Officer Fair's testimony that it was open at the time of the incident, about three months earlier, especially given Officer Kisaberth's lack of memory on the subject.

opaque, we cannot say that the finding that Ingram was not free to leave, and therefore was seized, is clearly erroneous.

### B

The state next argues that the stop of Ingram was lawful, even if it was a seizure, because the police had reasonable and articulable grounds for believing that he was engaged in criminal activity. This position was not argued to the trial court; rather, the state argued simply that there was no seizure, and it appears that both the state and the trial court assumed that there were no reasonable grounds for a seizure. The trial court specifically found that the state had failed "to show any reasonable * * * grounds to stop the Defendant, this specific Defendant, on private property * * *." We find that even if there were sufficient grounds to have stopped Ingram, the trial court could have found upon the evidence presented to it that Ingram's consent to the subsequent search was not freely given. See Subpart II–C, below. Therefore, we need not reach the question of whether the trial court was correct in finding a failure of proof of grounds for the initial stop.

### C

The state next contends that Ingram freely and voluntarily consented to the search of his person.[2]

The state bears the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing merely an acquiescence to a claim of lawful authority. *Bumper v. North Carolina* (1968), 391 U.S. 543, 549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802. Further, the degree of proof required to show that the consent was not contaminated by duress, coercion, or trickery is proof by "clear and positive evidence." A "clear and positive" standard is not significantly different from the "clear and convincing" standard of evidence, which is the amount of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations to be proved. It is an intermediate standard of proof, being more than a preponderance of the evidence and less than evidence beyond a reasonable doubt. *State v. Danby* (1983), 11 Ohio App.3d 38, 41, 11 OBR 71, 74, 463 N.E.2d 47, 50, citing *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 364, 120 N.E.2d 118, 123.

---

**2.** The state has not contended, either at trial or on appeal, that the *search* (as opposed to the initial stop) was predicated upon a reasonable and articulable suspicion, but has instead relied upon Ingram's alleged voluntary consent to the search.

The voluntariness of the consent is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 862. "But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Id.* at 228, 93 S.Ct. at 2048, 36 L.Ed.2d at 863.

In this case, the officers were in uniform, wearing guns, and they approached Ingram on private property, not in a public place. They stood close to him, blocking his exit from the porch. They told him they were looking for someone selling drugs from that house. The officers did not tell him that he had the right to refuse to be searched. The trial court found that the consent, where the officers "accost[ed] him in such a manner as to precipitate his volunteering to let them search him, [was] not a voluntary action under the circumstances * * *."

Whether the consent was voluntary was a question of fact to be determined by the trial court from the totality of the circumstances. The state has the burden of proving that the consent was not the product of duress or coercion, express or implied, by clear and positive evidence. The trial court found that the state failed to do so, and we are not prepared to say that the trial court's finding is against the manifest weight of the evidence.

The sole assignment of error is overruled.

### III

The state's sole assignment of error having been overruled, the order of the trial court is affirmed.

*Judgment affirmed.*

WILSON and WOLFF, JJ., concur.