OPINION
Defendant, George Ogden, appeals from the trial court's judgment classifying him a sexual predator.
On the night of November 5, 1988, Ogden retained the services of a prostitute. During their subsequent sexual encounter, Ogden hit the woman over the head with a metal bar or pipe and abducted her. Ogden transported the victim to his home where he held her against her will overnight. During the night, Ogden put tape over the woman's eyes and mouth and repeatedly raped the victim, orally, vaginally and anally. Ogden released her the following morning.
Ogden subsequently entered no contest pleas to a bill of information charging him with felonious assault, R.C. 2903.11(A)(2), and abduction, R.C. 2905.02(A)(2). The trial court found Ogden guilty and sentenced him to concurrent prison terms in accordance with law.
On December 14, 1999, a sexual predator classification hearing was held, following which the trial court found Ogden to be a sexual predator. From that determination Ogden timely appealed to this court.
Ogden's appellate counsel filed an Anders brief, Anders v. California(1967) 386 U.S. 738, asserting that he could find no meritorious issuesfor appellate review. At our invitation, Ogden subsequently filed a prose brief containing six assignments of error. After examining Ogden'spro se assignments of error and the "arguable issues" identified inappellate counsel's Anders brief, this court concluded that Ogden's claimthat the sexual predator designation was not supported by sufficientevidence and/or was against the manifest weight of the evidence hadarguable merit. Accordingly, we appointed new appellate counsel forOgden to assist him in presenting that claim.
 Ogden's claim is now before us for determination on the merits.
 ASSIGNMENT OF ERROR THE SEXUAL PREDATOR DESIGNATION PURSUANT TO R.C. 2950.09 IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 In order to adjudicate Ogden a sexual predator, the trial court was required to find by clear and convincing evidence that Ogden has been convicted of or pled guilty to a sexually oriented offense and that "he is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E); R.C. 2950.09(B)(3). Ogden's conviction for felonious assault constituted a sexually oriented offense. See R.C. 2950.01 (D)(3). Accordingly, the only remaining issue is whether Ogden is likely to engage in the future in another sexually oriented offense.
 Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.
 Cross v. Ledford (1954), 161 Ohio St. 469, 477; State v. Ingram (1992), 82 Ohio App.3d 341.
 In determining whether an offender is a sexual predator, the trialcourt may consider the following factors:
 (a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
 R.C. 2950.09(B)(2).
 A weight of the evidence argument challenges the believability of theevidence; which of the competing inferences suggested by the conflictingevidence is more believable or persuasive. State v. Hufnagle (Sept. 6,1996), Montgomery App. No. 15563, unreported. The proper test to applyto that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (October 2, 1997), Champaign App. No. 97-CA-03, unreported., Defendant argues that because of his age, 38, his lack of any prior convictions, and the substantial efforts he has made to educate and rehabilitate himself over the past ten years while in prison, the evidence strongly supports a finding that Defendant is not likely to re-offend.
At the sexual predator hearing the State presented a report prepared by a forensic psychologist, Dr. Hrinko (State's Exhibit 1), and the House Bill 180 Screening Instrument (State's Exhibit 2). In addition, Dr. Hrinko and Mary Williams, the probation officer who prepared the screening instrument, testified at the hearing. Ogden did not testify at the hearing or present any expert witnesses, but he did present a number of certificates regarding courses and programs he completed while incarcerated, including a report card reflecting grades achieved from courses Ogden has taken through Urbana University, letters in support of Ogden's character, and documents relating to Ogden's academic pursuits while in prison.
Dr. Hrinko acknowledged that Ogden had completed the only sex offender treatment program available to him in the institution where he is incarcerated. However, Dr. Hrinko testified that it is not a comprehensive treatment program and it did not have a significant impact on Ogden's risk of re-offending.
Dr. Hrinko noted that Ogden admitted he had a serious substance abuse problem, and that the alcohol and drug treatment program that Ogden completed while in prison could be very helpful in dealing with those problems.
Dr. Hrinko acknowledged that Ogden had participated in many programs and academic courses while in prison, and has done much to help himself once he is released. Dr. Hrinko testified, however, that while Ogden understood in general terms the material covered in those programs, he lacked an understanding of how to apply that information to help himself with his own problems. There were two main areas of concern to Dr. Hrinko.
First, Ogden does not believe that he has a sexual offending behavior problem. Ogden still denies the non-consensual, violent nature of his contact with this victim. That denial, according to Dr. Hrinko, inhibits successful treatment and rehabilitation.
Second, Ogden intends to separate himself from his family and be independent of them once he is released from prison. Dr. Hrinko testified that close, emotionally supportive relationships such as family are stabilizing influences that can help reduce the risk of future offenses by helping a person such as Ogden to cope with and manage his feelings and urges. Family members can notice and point out behavior changes that might be a precursor to re-offending. Without those strong resources, there is an increased risk of future difficulty. Dr. Hrinko did not specifically testify, however, relative to the likelihood of Ogden re-offending in the future.
Mary Williams acknowledged that factors A-G in the House Bill 180 Screening Instrument do not apply in this case and therefore favor Ogden. Nevertheless, Williams recommended to the trial court that Ogden be classified as a sexual predator based upon the existence of three factors.
Williams testified that a "pattern of abuse" exists in this case, factor H, because Ogden repeatedly raped this victim orally, vaginally and anally between 11:00 p.m. and 8:00 a.m. Williams further testified that Ogden "displayed cruelty," factor I, by hitting this victim over the head with a metal object which required five stitches, and by putting tape over the victim's eyes and mouth. Lastly, Williams testified about an "additional behavioral characteristic relating to Ogden's conduct," factor J, involving the fact that Ogden shaved the victim's pubic area and indicated that he preferred that.
Some of the evidence in this case weighs against a finding that Ogden is likely to commit additional sex offenses in the future. In his report, Dr. Hrinko noted that because of his age, 38, Ogden's risk for future offenses is in decline. Ogden has no history of other criminal offenses. Additionally, during his ten years in prison, Ogden has taken advantage of many of the educational and rehabilitative programs available to him; taking several college courses, completing trade programs for employment purposes, completion of a treatment program for drug/alcohol abuse, and completion of a treatment program for sex offenders. Ogden has also done extensive independent reading and study.
On the other hand, there is considerable evidence which permits a reasonable inference that Ogden poses a high risk for re-offending. For instance, the abusive and violent nature of Ogden's conduct with this victim, hitting her over the head with a metal object, abducting her, shaving her pubic area, and restraining her overnight while repeatedly raping her, vaginally, anally and orally. Ogden's continuing denial about the nature of his behavior inhibits successful treatment and rehabilitation, according to Dr. Hrinko.
Additionally, Ogden's superficial relationship with his family, coupled with his desire to be independent of his family and separate himself from them once he is released from prison, presents an increased risk for re-offending. Without these important resources, there is an increased risk for future difficulties once Ogden is released according to Dr. Hrinko.
Dr. Hrinko further noted in his report and testimony that the sex offender treatment program that Ogden completed while incarcerated was not of sufficient intensity or duration to have a significant impact on his risk for re-offending. Dr. Hrinko also expressed doubts about whether Ogden could apply what he had learned from various courses and programs he participated in while incarcerated, to help himself solve his own problems once he is released.
There is evidence in this record probative of the increased risk Ogden poses for re-offending. The trial court, after reviewing all of the evidence presented, concluded that the State had proven by clear and convincing evidence that Ogden is likely to engage in the future in one or more sexually oriented offenses. On this record as a whole we cannot say that in making its finding the trial court lost its way, that the evidence weighs heavily against such a finding, or that a manifest miscarriage of justice has resulted. The trial court's designation of Ogden as a sexual predator is not against the manifest weight of the evidence.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG J., concur.
 ______________ Grady, J.,