OPINION
{¶ 1} James Bielfelt appeals from a judgment of the Lake County Court of Common Pleas which sentenced him to a prison term of life with eligibility for parole after ten years and classified him as a sexual predator. On appeal, he argues that his guilty plea was not made knowingly, voluntarily, or intelligently; that he was denied effective assistance of counsel; and that his classification as a sexual predator was against the manifest weight of the evidence. For the following reasons, we affirm the judgment of the trial court. *Page 2 
 {¶ 2} Substantive Facts and Procedural History
 {¶ 3} Mr. Bielfelt was indicted on one count of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. The indictment stemmed from an incident where he performed oral sex on a five-year-old girl, his girlfriend's granddaughter, who used to call him "Papi."
 {¶ 4} As Mr. Bielfelt waived his right to be present at the arraignment, the trial court entered a plea of not guilty to both charges on his behalf. Subsequently, at a plea hearing held on March 2, 2007, he changed his plea from not guilty to guilty to the rape charge. The trial court entered a nolle prosequi on the gross sexual imposition count and ordered a presentence investigation report. At a sentencing hearing held on April 4, 2007, the court imposed a term of life with eligibility of parole after ten years for his conviction of rape. The court also labeled him as a sexual predator.
 {¶ 5} Mr. Bielfelt now appeals, [1] raising the following assignments of error for our review:
 {¶ 6} "[1.] Mr. Bielfelt's designation as a sexual predator was against the manifest weight of the evidence.
 {¶ 7} "[2.] The trial court erred to the prejudice of appellant by accepting his guilty plea, where such plea was not made knowingly, voluntarily, or intelligently. *Page 3 
 {¶ 8} "[3.] Mr. Bielfelt was denied the effective assistance of counsel, in violation of his rights under the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution, and counsel's deficient performance rendered Mr. Bielfelt's plea involuntary."
 {¶ 9} Sexual Predator Adjudication
 {¶ 10} In his first assignment of error, Mr. Bielfelt claims the trial court's designation of him as a sexual predator was against the manifest weight of the evidence.[2]
 {¶ 11} "In August 1999, Ohio defined three categories of sexual offenders. They were, starting with the category containing those offenders who are least likely to reoffend (1) sexually oriented offenders, (2) habitual sex offenders, and (3) sexual predators."State v. Wilson, 113 Ohio St.3d 382, 2007 Ohio 2202, ¶ 12, citing former R.C. 2950.01(B), (D), and (E), Am. Sub. H.B. No. 565, 147 Ohio Laws, Part II, 4493, 4521. *Page 4 
 {¶ 12} "[A] `sexual predator' is a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."Wilson at ¶ 15, citing R.C. 2950.01(E) and State v. Williams (2000),88 Ohio St.3d 513, 518-519.
 {¶ 13} In this case Mr. Bielfelt pled guilty to rape, a sexually oriented offense, and therefore the sole issue is whether the trial court properly determined he was likely to engage in one or more sexually-oriented offenses in the future.
 {¶ 14} In Wilson, the Supreme Court of Ohio explained the state's burden of proof in sexual predator adjudication as follows:
 {¶ 15} "The state must prove that an offender is a sexual predator by clear and convincing evidence. R.C. 2950.09(B)(4). Clear and convincing evidence is evidence that `will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" Id. at ¶ 20, citing Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. "To meet the clear-and-convincing standard requires a higher degree of proof than `a preponderance of the evidence,' but less than `evidence beyond a reasonable doubt.'"Wilson at ¶ 20, citing State v. Ingram (1992), 82 Ohio App.3d 341, 346.
 {¶ 16} "R.C. 2950.09(B)(3) lists ten factors for a court to consider in determining whether a sexual offender is a sexual predator."Wilson at ¶ 19. "These factors include (1) the offender's age, (2) the offender's criminal record, (3) the age of the victim, (4) whether there were multiple victims, (5) whether the offender used drugs or alcohol to impair the victim, (6) if the offender has previously been convicted of a crime, whether he completed his sentence, and if the prior offense was a sexually oriented offense, *Page 5 
whether he completed a sex-offender program, (7) whether the offender has a mental illness or disability, (8) the nature of the offender's sexual contact with the victim and whether it was part of a pattern of abuse, (9) whether the offender displayed cruelty or made threats of cruelty, and (10) any other `behavioral characteristics' that contribute to the offender's actions." Wilson at fn. 1, citing R.C. 2950.09(B)(3)(a) through (j).
 {¶ 17} Moreover, "a court has discretion to determine what weight, if any, it will assign to each factor, and under R.C. 2950.09(B)(3)(j) may consider other `characteristics' that contribute to the offender's conduct." Wilson at ¶ 19, citing State v. Thompson (2001),92 Ohio St.3d 584, paragraph one of the syllabus.
 {¶ 18} Finally, the Supreme Court of Ohio provided the following standard of review to be applied by a court of appeals in a sexual predator classification matter:
 {¶ 19} "Because sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature, a trial court's determination in a sex-offender-classification hearing must be reviewed under a civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence." Wilson at syllabus.
 {¶ 20} At the sexual predator adjudication hearing, Mr. Bielfelt's counsel stressed that he had no prior felony convictions; that the instant case involved only a single incident; no violence was used; and that Dr. Rindsberg's report indicated that he was at only moderate risk to reoffend.
 {¶ 21} The transcript reflects the following analysis by the trial court prior to finding Mr. Bielfelt a sexual predator: *Page 6 
 {¶ 22} "The Court finds pursuant to 2950.09 that the defendant is age 54, that the child was age 5 at the time of the offense. That the defendant had prior convictions for misdemeanor offenses; possession of marijuana, burglary, disorderly conduct, open container and three OVI convictions with a reckless operation on a hit skip and leaving the scene. That he has no felony convictions. That the offense did not involve multiple victims. And there was no drug or alcohol used to impair the victim.
 {¶ 23} "The Court has indicated the criminal history of the defendant and regarding (g) of 2950.09 the Court finds that the defendant has been diagnosed with paraphilia and alcohol abuse, antisocial personality and antisocial traits with a history of rule violations as evidenced by the fact that he has multiple offenses [and] convictions for offenses.
 {¶ 24} "That there was not a pattern of abuse, this was a single event. And whether the offender during the commission of the sexually oriented offense displayed cruelty, there is no evidence that there were threats or injury of any kind; however this Court's view of molesting children is that it is a cruelty [sic] act in and of itself to perpetrate the types of activities the defendant perpetrated on this child [and it] is cruelty and was a display of cruelty.
 {¶ 25} "And the statute notes any additional behavior characteristics and the Court finds that the element that the defendant thinks that the child enjoyed the activity is just abominable.
 {¶ 26} "So therefore, the Court finds that there is clear and convincing evidence that the defendant is in fact a predator." *Page 7 
 {¶ 27} Also, in its judgment entry adjudicating Mr. Bielfelt a sexual predator, the court stated that after reviewing the presentencing report, the victim impact statement, and the recommendation of Dr. Jeffrey Rindsberg, Court Psychologist for the Lake County Court of Common Pleas, it found, by clear and convincing evidence, that Mr. Bielfelt had previously been convicted of a sexually oriented offense and is likely to engage in one or more sexually oriented offenses in the future. In its judgment entry, the court also reiterated its findings regarding the statutory factors set forth in R.C. 2950.09, stating:
 {¶ 28} "a.) The Defendant was 54 years of age at the time of the offense;
 {¶ 29} "b.) Although the Defendant has no prior felonies or sex offense convictions, he has a prior criminal record, including three misdemeanor convictions for operating a vehicle under the influence of alcohol/drugs; burglary; possession of marijuana; open container; reckless operation; hit/skip; and leaving the scene of an accident; all of which demonstrates a disregard for the law;
 {¶ 30} "c.) The victim of the sexually oriented offense for which sentence was imposed was five (5) years of age at the time of the offense;
 {¶ 31} "d.) The defendant did not use drugs or alcohol to impair the victim or to prevent the victim from resisting;
 {¶ 32} "***.
 {¶ 33} "g.) The Defendant does suffer from a history of mental illness or mental disability, including Paraphilia, not otherwise specified; Alcohol Abuse; and a history of Anti-social Behavior and Traits;
 {¶ 34} "***. *Page 8 
 {¶ 35} "i.) The nature of the Defendant's actions during the commission of the sexually-oriented offense displayed cruelty or threats of cruelty;
 {¶ 36} "j.) Additional behavioral characteristics that contributed to the Defendant's conduct include Defendant's belief that the victim enjoyed the sexual activity."
 {¶ 37} Applying the manifest-of-weight-of-the-evidence standard, we are satisfied that the trial court made sufficient findings under the former R.C. 2950.09 to justify its classification of Mr. Bielfelt as a sexual predator and that competent, credible evidence supports these findings. In assessing Mr. Bielfelt's likelihood of recidivism, the court stressed his history of convictions for various prior offenses, which demonstrates a disregard for the law; the nature of his sexual conduct, which in itself displayed cruelty in light of the victim's young age; and his insistence that the five-year-old victim enjoyed the sexual activity he performed on her.
 {¶ 38} Mr. Bielfelt argues, in particular, that his sexual predator classification is against the manifest weight of the evidence, because Dr. Rindsberg's report indicated that he presented "only" a moderate risk of reoffending.
 {¶ 39} We note "a trial court is not required to rely solely on the psychiatric findings or opinions in its determination regarding the likelihood of recidivism." State v. Reeves, 11th Dist. No. 2006-T-0099,2007-Ohio-4765, ¶ 40 citing State v. Robertson, 147 Ohio App.3d 94, 101. "Rather, the psychiatric evidence is to be viewed in totality with the other evidence." Id.
 {¶ 40} Responding to a similar argument made by the defendant inState v. Burgan, 11th Dist. No. 2003-L-132, 2004-Ohio-6185, we noted: *Page 9 
 {¶ 41} "[T]he trial court was presented with the unenviable task of predicting the future to determine whether appellant would commit another sexual offense. Clinical evidence showed that he presented up to a `moderate' risk of reoffending. We cannot say this clinical evidence is inherently inconsistent with a sexual predator adjudication. Rather, when viewed in conjunction with the other facts of this case, [the expert's] report supports the trial court's judgment." Id. at ¶ 28. See, also, State v. Purser, 153 Ohio App.3d 144, 2003-Ohio-3523, ¶ 38 (even a "low risk" result from standardized testing does not preclude a sexual predator adjudication); State v. Lawrinson, 11th Dist. No. 2005-L-003,2006-Ohio-1451, ¶ 37 (this court citing Purser with approval).
 {¶ 42} Here, viewing Mr. Rindsberg's "moderate risk" assessment in totality with the other evidence before the court, including the victim's young age and Mr. Bielfelt's insistence that the victim enjoyed the sexual activity, we cannot say that the expert's assessment is inherently inconsistent with or precludes the sexual predator adjudication. Mr. Bielfelt's first assignment of error is overruled.
 {¶ 43} Guilty Plea
 {¶ 44} In his second assignment of error, Mr. Bielfelt contends that the trial court erred in accepting his guilty plea because it was not knowingly, intelligently, or voluntarily made. He alleges that he did not understand either the effect of the plea, the nature of the charge, or the consequences he would face upon entering the plea.
 {¶ 45} Crim. R. 11(C)(2) sets forth the requirements for guilty pleas. It provides:
 {¶ 46} "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following: *Page 10 
 {¶ 47} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 48} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 49} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 50} "Before accepting a guilty plea, the trial court must inform the defendant that by pleading guilty, the defendant is waiving the rights enumerated in Crim. R. 11(C)(2)(c). Moreover, `the waiver must be voluntary, intelligently, and knowingly made and the defendant must understand the nature of the charges against him and the consequences of his plea of guilty. Otherwise, it is in violation of due process and is therefore void.'" State v. Patt, 11th Dist. No. 2002-L-073, 2004-Ohio-2601, ¶ 12, citing State v. Buchanan (1974),43 Ohio App.2d 93, 96.
 {¶ 51} In determining whether a guilty plea is knowingly, intelligently, and voluntarily entered, the reviewing court must look to the totality of the circumstances. State v. Carter (1979),60 Ohio St.2d 34, 38. "To do so, we look at all the particular *Page 11 
facts and circumstances surrounding the case." Id. citing Johnson v.Zerbst (1938), 304 U.S. 458, 464.
 {¶ 52} "Generally, a guilty plea is deemed voluntary if the record demonstrates the trial court advised the defendant of (1) the nature of the charge and the maximum penalty involved, (2) the effect of entering a guilty plea, and (3) that the defendant will be waiving his constitutional rights by entering the plea." State v. Dudas, 11th Dist. No. 2008-L-081 and 2008-L-082, 2008-Ohio-7043, ¶ 30, citing State v.Madeline, 11th Dist. No. 2000-T-0156, 2002-Ohio-1332.
 {¶ 53} The Supreme Court of Ohio, in State v. Griggs,103 Ohio St.3d 85, 2004-Ohio-4415, syllabus, stated that "[a] defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim. R. 11 is presumed not to be prejudicial."
 {¶ 54} Here, Mr. Bielfelt's written plea of guilty, signed by him and his counsel, shows that he was advised of his rights and that he agreed to waive them. The written plea stated:
 {¶ 55} "[M]y counsel has explained to me the facts and circumstances surrounding my plea, and the Court and my counsel have informed me of the charge against me and the penalty provided by law for that charge.
 {¶ 56} "Prior to signing this written plea of `Guilty,' the Court has personally addressed and explaining to me that I have the following constitutional rights which I would waive by pleading `Guilty.'
 {¶ 57} "***. *Page 12 
 {¶ 58} "I hereby state that I understand these rights and privileges and the possible consequence of a `Guilty' plea. I hereby waive and reject all of these rights. I am voluntarily pleading `Guilty' of my own free will. *** By pleading `Guilty,' I admit committing the offense ***.
 {¶ 59} "I am not under the influence of drugs or alcohol ***. No threats have been made to me. No promises other than those which are part of this plea agreement have been made."
 {¶ 60} Furthermore, our review of the transcript from the change of plea hearing shows that the trial court engaged in the requisite Crim. R. 11 colloquy. The court first inquired about his educational background to ensure that he understood the proceedings. The court then explained that the rape against him required a life imprisonment with parole eligibility after ten years of serving the sentence, if he was found guilty of the offense. When asked if he understood the penalty, he responded that he did. The court then explained his right to a trial as well as other constitutional rights as a criminal defendant. When the court asked him to talk about the sexual conduct with the victim, the following exchange occurred:
 {¶ 61} "THE COURT: Tell me what happened with this sexual conduct with a minor female.
 {¶ 62} "THE DEFENDANT: It just happened.
 {¶ 63} "THE COURT: Well, what happened?
 {¶ 64} "THE DEFENDANT: That's all I got to say about that.
 {¶ 65} "THE COURT: What happened?
 {¶ 66} "THE DEFENDANT: I'm sorry for it and it will never happen again. *Page 13 
 {¶ 67} "THE COURT: I understand that but what happened specifically?
 {¶ 68} "THE DEFENDANT: I don't know it just happened I —
 {¶ 69} "THE COURT: Well, it said you had sexual conduct, what did you do?
 {¶ 70} "THE DEFENDANT: Just, I don't know.
 {¶ 71} "THE COURT: What do you mean you don't know?
 {¶ 72} "THE DEFENDANT: It's hard to explain myself. I don't know, whatever she said I guess.
 {¶ 73} "*** .
 {¶ 74} "[DEFENSE COUNSEL]: He's having a difficult time speaking about his actual conduct. I don't know if you want me to speak for him?
 {¶ 75} "THE DEFENDANT: I don't know.
 {¶ 76} "THE COURT: Well, I want to be able to determine whether or not he's, whether he's knowingly waiving his rights and entering a plea of guilty, otherwise I have to advise him about perhaps an Alford plea.
 {¶ 77} "[DEFENSE COUNSEL]: No, Your Honor, he certainly is not requesting an Alford plea. He just had a hard time expressing his feelings.
 {¶ 78} "THE DEFENDANT: I didn't really do anything.
 {¶ 79} "***.
 {¶ 80} "THE COURT: — the representation by your attorney is that you wish to plead guilty to a charge of rape that carries a life prison sentence with parole eligibility after 10 years. Now what you are telling me is that you didn't do anything, you don't remember.
 {¶ 81} "THE DEFENDANT: Not sexually to her. *Page 14 
 {¶ 82} "THE COURT: Pardon.
 {¶ 83} "THE DEFENDANT: Not sexually to her, no, I didn't stick anything in anything or —
 {¶ 84} "[PROSECUTOR]: Your Honor, the allegation, this complaint that's contained in the indictment [] is sexual conduct with oral sex. He performed cunnilingus on the 5 year old victim at that point in time during the time frame of the indictment.
 {¶ 85} "THE COURT: Well, is that what happened?
 {¶ 86} "THE DEFENDANT: Yes, sir.
 {¶ 87} "THE COURT: Did you have oral sex with this child?
 {¶ 88} "THE DEFENDANT: Yes, sir, that was it.
 {¶ 89} "THE COURT: Pardon.
 {¶ 90} "THE DEFENDANT: That was all. She didn't help the matter much."
 {¶ 91} At that point, the court advised him that he had a right not to enter a guilty plea and explained his constitutional rights if he chose to go to trial. When the court asked if he understood those rights, the following colloquy occurred:
 {¶ 92} "THE DEFENDANT: I don't think I did anything that's worth 10 years, that's going to put me away 10 years.
 {¶ 93} "THE COURT: Mr. Bielfelt, do you understand what I've just explained to you about your rights?
 {¶ 94} "THE DEFENDANT: Yes.
 {¶ 95} "THE COURT: Do you wish to have those rights and have a jury trial?
 {¶ 96} "THE DEFENDANT: No, sir, I'd rather — *Page 15 
 {¶ 97} "THE COURT: Now do you understand if you enter a plea of guilty here today that you're facing a penalty of life imprisonment with 10 years? You have to serve 10 years before you're eligible for parole; do you understand that?
 {¶ 98} "THE DEFENDANT: Yes, sir. Okay. I'm going to say not guilty then —
 {¶ 99} "THE COURT: You want to —
 {¶ 100} "THE DEFENDANT: — cause I don't think 10 years for what I did, it's too much.
 {¶ 101} "THE COURT: Well, it's up to you, if you want to withdraw your plea that's perfectly permissible to do so."
 {¶ 102} The trial court then asked Mr. Bielfelt if he desired to speak to his attorney about his rights. The record reflects that a recess was taken to allow Mr. Bielfelt to speak to his counsel, after which counsel reported to the court that Mr. Bielfelt would like to continue with his guilty plea. Mr. Bielfelt answered affirmatively when the court asked him if he wished to enter a guilty plea. The court then went over his written guilty plea and asked him if he read and understood it, to which Mr. Bielfelt answered yes.
 {¶ 103} Our review of the record indicates that although Mr. Bielfelt appeared to initially believe the offense of rape required penetration and felt that he did not deserve the punishment of ten years of imprisonment before parole eligibility — as reflected in his proclamation that he "didn't stick anything in anything" — he admitted to engaging in oral sex with the victim. Pursuant to Griggs, a defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt; in such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim. R. 11 is presumed not to be prejudicial. *Page 16 
 {¶ 104} In this case we do not even need to rely on such as presumption because the record reflects that the trial court, before accepting his guilty plea, repeatedly advised him of his constitutional rights, explained the charge of rape against him, and ensured he understood the effect and consequences of a guilty plea. Given this record, we cannot but conclude Mr. Bielfelt's guilty plea was made knowingly, intelligently, and voluntarily. The second assignment of error is overruled.
 {¶ 105} Ineffective Assistance of Counsel
 {¶ 106} In his third assignment of error, Mr. Bielfelt contends his trial counsel's deficient performance caused him to waive his constitutional rights and therefore his plea was not knowing and voluntary and should be void. He argues specifically that his counsel did not ensure that he understood the nature of the charge against him, as demonstrated by his inability to articulate when asked by the court what he had done to bring about the rape charge. He also claims his counsel "prodded" him into pleading guilty at a recess taken during the plea hearing. He argues but for his counsel's deficient performance, he would not have pled guilty.
 {¶ 107} "In the context of a guilty plea, the standard of review for ineffective assistance of counsel is whether: (1) counsel's performance was deficient; and (2) the defendant was prejudiced by the deficient performance in that there is a reasonable probability that, but for counsel's error, the defendant would not have pled guilty."Dudas at ¶ 27, citing Madeline at *9. The defendant has the burden of proving ineffective assistance of counsel. Madeline at *10.
 {¶ 108} Furthermore, this court had repeatedly emphasized "[t]he mere fact that, if not for the alleged ineffective assistance of counsel, the defendant would not have *Page 17 
entered a guilty plea is not sufficient to establish the requisite connection between the guilty plea and the ineffective assistance."Dudas, quoting Madeline at *10, citing State v. Sopjack (Dec. 15, 1995), 11th Dist. No. 93-G-1826, 1995 Ohio App. LEXIS 5572, *11, citingState v. Haynes (Mar. 3, 1995), 11th Dist. No. 93-T-4911, 1995 Ohio App. LEXIS 780, *4-*5. "Rather, ineffective assistance of trial counsel is found to have affected the validity of a guilty plea when it precluded a defendant from entering his plea knowingly and voluntarily."Dudas at ¶ 28, ¶ quoting Madeline at *10.
 {¶ 109} "A claim that a guilty plea was induced by ineffective assistance of counsel must be supported by evidence where the record of the guilty plea shows it was voluntarily made." Dudas at ¶ 31, citingState v. Malesky (Aug. 27, 1992), 8th Dist. No. 61290, 1992 Ohio App. LEXIS 4378 and State v. Kapper (1983), 5 Ohio St.3d 36. InDudas, we quoted the following holding from Malesky:
 {¶ 110} "A naked allegation by a defendant of a guilty plea inducement, is insufficient to support a claim of ineffective assistance of counsel, and would not be upheld on appeal unless it is supported by affidavits or other supporting materials, substantial enough to rebut the record which shows that his plea was voluntary." Dudas at ¶ 32, quoting Malesky at *5.
 {¶ 111} Here, Mr. Bielfelt alleges in his brief that his attorney "prodded" him into pleading guilty during a recess taken off the record at the plea hearing. He, however, does not submit affidavits or other evidentiary material to substantiate in any manner his allegation of inducement.
 {¶ 112} As we have already determined, although Mr. Bielfelt hesitated when asked to describe the sexual conduct he had with the victim and protested the severity *Page 18 
of the penalty because no penetration was involved in his offense, the record demonstrates his plea was made knowingly and voluntarily.
 {¶ 113} Because the record of the guilty plea shows it was voluntarily made, his ineffective assistance of counsel claim cannot succeed in the absence of any evidence supporting his claim of inducement.Dudas at ¶ 31. The third assignment of error is without merit.
 {¶ 114} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., concur.
[1] Mr. Bielfelt did not appeal from the trial court's judgment entry journalized on April 9, 2007 until April 9, 2008, when he filed a motion for a delayed appeal on the ground that he was not aware of the time limit for an appeal and his defense attorney failed to advise him of his right to appeal. This court granted his delayed appeal.
[2] The Adam Walsh Act, effective January 1, 2008, changed the Ohio's sex offender registration law significantly. It authorizes the Ohio Attorney General to determine the classification of each offender subject to registration under a three-tiered system. Classifications are now based solely on the offense for which an offender is convicted. A defendant's likelihood to reoffend is no longer considered. SeeState v. Johnson, 11th Dist. No. 2008-L-015, 2008-Ohio-4666, ¶ 9-10, citing R.C. 2950.01(E), (F), and (G). "Under R.C. 2950.032 and R.C. 2950.031, the Attorney General was to determine the new tier classification for each offender at any time after July 1, 2007, and not later than December 1, 2007. A registered letter detailing the offender's new classification and a right to a court hearing to contest the application of the new statute was to be sent to the offender. If the offender failed to request a hearing within sixty days of receipt of the registered letter, the failure constituted a waiver by the offender to a hearing and the offender `[was] bound by the determinations of the attorney general contained in the registered letter sent to the offender ***.'" Johnson at ¶ 14. Under the new R.C. Chapter 2950, therefore, the designation of sexual predator no longer exists, nor do the related hearings under R.C. 2950.09; offenders are now classified on the basis of the offense for which they have been convicted. Johnson, footnote 2. Here, the state contends that the issue of whether Mr. Bielfelt was properly classified as a sexual predator is moot. However, the record in the instant case does not reflect Mr. Bielfelt has been reclassified or either requested or waived his right to a hearing under the new statute, therefore, we will review his sexual predator classification claim. SeeJohnson at ¶ 15; State v. Brunelle-Apley, 11th Dist. No. 2008-L-014,2008-Ohio-6412, ¶ 155. *Page 1