[Cite as *State v. Hill*, 2021-Ohio-2647.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 20 CAA 12 0051 |
| GARY M. HILL | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:     Appeal from the Delaware County Court
                              of Common Pleas, Case No. 19 CR I 01
                              0035


JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       July 30, 2021


APPEARANCES:


For Plaintiff-Appellee                  For Defendant-Appellant

MELISSA A. SCHIFFEL                     WILLIAM T. CRAMER
Delaware County Prosecuting Attorney    Cramer Law Office
                                        470 Olde Worthington Road, Suite #200
R. JOSEPH VARVEL                        Westerville, Ohio 43082
Assistant Prosecuting Attorney
Delaware County Prosecutor's Office
145 North Union Street
Delaware, Ohio 43015

*Hoffman, J.*

**{¶1}** Defendant-appellant Gary M. Hill appeals the November 17, 2020 Judgment Entry of Prison Sentence entered by the Delaware County Court of Common Pleas, which designated him a sexual predator under Megan's Law. Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE CASE AND FACTS

**{¶2}** On January 17, 2019, the Delaware County Grand Jury returned a 14-count Indictment, charging Appellant with one count of public indecency, one count of menacing by stalking, one count of kidnapping, four counts of rape with attendant sexually violent predator specifications, and seven counts of gross sexual imposition. The offenses occurred over the span of two decades and involved four different minor victims. Appellant appeared for arraignment on January 30, 2019, and entered pleas of not guilty to the charges. Upon the state's motions, the trial court dismissed the public indecency and menacing by stalking counts on March 5, 2019, and August 2, 2019, respectively.

**{¶3}** Appellant appeared before the trial court on August 17, 2020, and, pursuant to a plea agreement with the state, withdrew his former pleas of not guilty and entered pleas of no contest to one count of rape and three counts of gross sexual imposition. In exchange, the state agreed to dismiss the remaining counts and the specifications. Appellant also agreed to waive his right to appeal pre-trial motion rulings and the state agreed to recommend a pre-sentence investigation. After conducting a Crim. R. 11 colloquy with Appellant, the trial court accepted the pleas and found Appellant guilty.

**{¶4}** The trial court conducted a sex offender classification hearing and a sentencing hearing on November 17, 2020.

{¶5} Victim Jane Doe 1 addressed the court. She explained she was 9 ½ years old when she began living with her older half-sister, Amy, who had become her legal guardian, Amy's husband, and their two young daughters ("her family"). Amy and Appellant were step-siblings. Jane Doe 1 met Appellant when she was about 10 years old. She immediately felt extremely uncomfortable around him. Whenever he was around, Appellant would not only say vulgar and obscene things to her, but also make crude, sexual gestures toward her.

{¶6} In June, 2001, Jane Doe 1's father passed away. She had turned 14 years old a week earlier. Following the wake, Jane Doe 1 and her family returned to Appellant's home where they were staying while their new home was being built. Jane Doe 1 walked upstairs, turned right, and found Appellant openly masturbating. Appellant gestured to her to come toward him. Jane Doe 1 locked herself into a nearby bathroom until a "safe" adult knocked on the door.

{¶7} After Jane Doe 1 and her family moved into their new home, Appellant "would show up invariably any time he desired." Nov. 17, 2020 Hearing at 21. Jane Doe 1 cared for her two nieces for a few hours after school each day. For approximately two years, Appellant would repeatedly stop by and watch her care for her nieces, who were 9 and 5 years old. Appellant's advances toward Jane Doe 1 continued to escalate. He would press his body against hers and make vulgar remarks. On one occasion, Appellant offered Jane Doe 1 pills and asked her to perform fellatio on him. Appellant removed his erect penis from his pants and began to stroke it. He told Jane Doe 1 if she did not do as he requested, someone in the house would have to do it. Fearing for her nieces, she complied.

{¶8}  Jane Doe 1 lived in constant fear Appellant would harm her nieces.  She never knew when Appellant would appear.  When he did, she pleaded with him to leave.  Appellant mocked her and continued the abuse.  Jane Doe 1 was 15 years old when Appellant took her away from her home to a familiar residence.  He quickly and violently removed their clothing, compelled her to lay down, and forced himself on top of her.  Spewing vulgarities, Appellant touched her body, kissed her, and then digitally penetrated her.  Appellant only stopped when he heard noises coming from another room.  He frantically told her to get dressed and they left the residence.

{¶9}  Victim Jane Doe 4 also addressed the court.  She indicated she had known Appellant as long as she could remember.  Jane Doe 4 was best friends with one of Appellant's daughters.  Appellant became a father figure to her after her parents divorced and her father went into rehab.  Jane Doe 4 joined Appellant, his girlfriend, and his daughters on a trip to a pumpkin patch.  When Jane Doe 4 exited the car, Appellant commented to her about her lips, her eyes, and her behind.  Jane Doe 4 would visit Appellant's home when his daughter was staying with him.  Appellant would ask both girls to sit on his lap.

{¶10}  On one occasion, Appellant was talking to his daughter and Jane Doe 4 while the girls were in his daughter's bedroom.  Appellant's daughter left the room, and he immediately "cuddled up beside" Jane Doe 4.  Appellant was behind her and she could feel his erection.  Appellant's daughter returned just as he started to touch Jane Doe 4.

{¶11}  Victim Jane Doe 2 was 15 years old when Appellant molested her in 2004.  Jane Doe 2's mother babysat Appellant's children in her home.  One day, Jane Doe 2

was in the laundry room when Appellant entered and grabbed her.  He restrained her and forced his hands down her pants, groping the outside of her vagina.

{¶12}  The prosecutor read a statement from Victim Jane Doe 3's mother.  Jane Doe 3 was 13 years old when Appellant molested her in 2005.  Appellant was an acquaintance of Jane Doe 3's mother.  Appellant attended a gathering at the home of Jane Doe 3's mother.  Jane Doe 3 went to bed.  The adults still at the gathering were on the back deck.  Appellant went inside and proceeded upstairs to Jane Doe 3's bedroom.  As Jane Doe 3 laid on her bed, Appellant pulled down the girl's pants and violently molested her.  The following day, Appellant called Jane Doe 3 and asked her if she was still a virgin.

{¶13}  On the record, the trial court considered the relevant factors set forth in former R.C. 2950.09(B)(3), Megan's Law, and classified Appellant a sexual predator as to counts 2 (rape), 8 (gross sexual imposition), and 9 (gross sexual imposition).  The trial court also classified Appellant a Tier 1 sex offender under the Adam Walsh Act as to count 14 (gross sexual imposition).  Thereafter, the trial court sentenced Appellant to an aggregate term of incarceration of 14 ½ years.

{¶14}  It is from the trial court's classification of him as a sexual predator under Megan's Law Appellant appeals, raising as his sole assignment of error:


THE TRIAL COURT ERRED IN FINDING APPELLANT TO BE A SEXUAL PREDATOR UNDER THE FORMER MEGAN'S LAW.

*Megan's Law*

{¶15} In 1996, the General Assembly enacted Ohio's version of the federal "Megan's Law" legislation, which created a comprehensive registration and classification system for sex offenders. *State v. Bodyke*, 126 Ohio St.3d 266, 2010–Ohio–2424, 933 N.E.2d 753, ¶ 6–7. Under Megan's Law, a sentencing court was required to determine whether a sex offender fell into one of three classifications (1) sexually oriented offender, (2) habitual sex offender, or (3) sexual predator. *State v. Cook*, 83 Ohio St.3d 404, 407, 700 N.E.2d 570 (1998).

{¶16} In 2007, the Ohio General Assembly enacted the Adam Walsh Act, which imposed a three-tiered sexual offender classification system. *Bodyke*, supra at ¶ 20. Thus, sexual predator hearings were no longer necessary under the Adam Walsh Act, since classifications were automatically determined based on the offense committed. *Id.* However, the Ohio Supreme Court held the Adam Walsh Act could not be applied retroactively to offenders who committed their offenses prior to the act's effective date, January 1, 2008. Because Appellant committed the offenses which triggered the sexual predator hearing prior to January 1, 2008, Megan's Law is the applicable classification system. *Id.*

{¶17} A sexual predator classification under Megan's Law is considered civil in nature; therefore, the civil manifest weight of the evidence standard of review applies on appeal. *State v. Nelson*, 8th Dist. Cuyahoga No. 101228, 2014–Ohio–5285, ¶ 8. Under the manifest weight of the evidence standard, this Court must give "great deference" to the trial court's findings of fact. *State v. Wilson*, 113 Ohio St.3d 382, 2007–Ohio–2202, 865 N.E.2d 1264, ¶ 26. "Thus, a judgment supported by 'some competent, credible

evidence going to all the essential elements of the case' must be affirmed." *Id.,* citing *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978)

{¶18} "To earn the most severe designation of sexual predator, the defendant must have been convicted of or pled guilty to committing a sexually oriented offense and must be 'likely to engage in the future in one or more sexually oriented offenses.' R.C. 2950.01(E)." *State v. Eppinger,* 91 Ohio St.3d 158, 161, 2001–Ohio–247, 743 N.E.2d 881. The state has the burden of proving that the offender is a sexual predator by clear and convincing evidence. *State v. Wilson,* 113 Ohio St.3d 382, 865 N.E.2d 1264, 2007–Ohio 2202, at ¶ 20, citing former R.C. 2950.09(B)(4). "Clear and convincing evidence is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id.,* quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The "clear-and-convincing standard requires a higher degree of proof than a 'preponderance of the evidence,' but less than 'evidence beyond a reasonable doubt'." *Id.,* quoting *State v. Ingram,* 82 Ohio App.3d 341, 346, 612 N.E.2d 454 (1992).

{¶19} In making its determination as to whether an offender is a sexual predator, the trial court must consider all relevant factors to determine whether the individual is likely to engage in future sex offenses. These factors include, but are not limited to: (1) the age of the offender and criminal record; (2) the victim's age; (3) whether the offense involved multiple victims; (4) whether the offender used drugs or alcohol to impair the victim; (5) if the offender has previously been convicted of any criminal offense; (6) whether the offender participated in any available program for sex offenders; (7) whether the offender demonstrated a pattern of abuse or displayed cruelty toward the victim; (8)

any mental illness or disability of the offender; and (9) any other behavioral characteristics that contribute to the sex offender's conduct. Former R.C. 2950.09(B)(3)(a)-(j).

**{¶20}** The "trial court is not required to individually assess each of these statutory factors on the record nor is it required to find a specific number of these factors before it can adjudicate an offender a sexual predator so long as its determination is grounded upon clear and convincing evidence." *State v. Patterson*, 5th Dist. Stark No. 2019CA00090, 2020-Ohio-244, ¶ 14, quoting *State v. Caraballo,* 8th Dist. Cuyahoga No. 89757, 2008–Ohio–2046, ¶ 8. "A trial court may find an offender to be a sexual predator "even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually-oriented offense." *State v. Randall* (2001), 140 Ohio App.3d 160, 166. "The court need not elaborate on its reasons for finding certain factors as long as the record includes the particular evidence upon which the trial court relied in making its adjudication." *Caraballo*, supra at ¶ 8.

*Analysis*

**{¶21}** Appellant argues the state failed to prove by clear and convincing evidence he is "likely to engage in the future in one or more sexually oriented offenses." Specifically, Appellant contends, in making the sexual predator determination, "the trial court erroneously found no evidence of mental illness" and did not give the appropriate weight to his prior criminal history, which was minor and did not include any prior sex offenses or prior sex offender treatment.  Brief of Appellant at 11.

**{¶22}** With respect to the mental health factor, Appellant states the presentence investigation report revealed he attempted suicide in 2005, and was hospitalized in a

mental health facility as a result. In addition, he was diagnosed with bipolar disorder and anxiety in 2013, and was under a doctor's care for those conditions. Appellant concludes he "had serious mental health issues that the trial court failed to properly consider." *Id.*

{¶23} At the November 16, 2020 joint classification and sentencing hearing, the trial court addressed the factors set forth in former R.C. 2950.09(B)(3). The trial court found no evidence of any mental illness or mental disability. Even if the trial court's finding was erroneous, as Appellant contends, there is no evidence an opposite finding, i.e., Appellant had serious mental health issues, would be a mitigating factor for a lower classification. The trial court was not required to "tally up or list the statutory factors in any particular fashion." *State v. Ford*, 8th Dist. Cuyahoga No. 83683, 2004-Ohio-3293, ¶ 7. In fact, "[t]he trial court may place as much or as little weight on any of the factors as it chooses; the test is not a balancing one. Nor does the trial court have to find the majority of the factors to be applicable to the defendant in order to conclude the defendant is a sexual predator." *State v. Butler*, 8th Dist. Cuyahoga No. 86554, 2006-Ohio-4492, ¶ 16.

{¶24} We now turn to Appellant's assignment of error as it pertains to the trial court's failure to give the appropriate weight to his prior criminal history. Appellant recognizes defense counsel's reference to a finding of a prior sex offense prosecuted in a separate action relates to a sexually violent predator specification, but submits the same focus is expressly contained within Megan's Law, specifically, the middle level, habitual sex offender. *Id.* at 12. Appellant concludes, because he "would not qualify as a habitual sex offender because he lacks the prior conviction[,] [i]t defies logic to require anything less to qualify someone as a sexual predator with the highest level of supervision." *Id.* at 13.

{¶25}  Former R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."  The lack of a prior conviction does not somehow lessen the severity of the crimes to which Appellant pled guilty.

{¶26}  Upon review of the record, we find the trial court classification of Appellant as a sexual predator is supported by competent, credible evidence. The record reveals Appellant was in his thirties at the time of the offenses and his victims were girls in their early teens.  Appellant was in position of trust and power over his victims.  He knew their families.  The nature of Appellant's sexual conduct included oral and vaginal intercourse.  Appellant's conduct showed a propensity toward cruelty.  He threatened to abuse Jane Doe 1's young nieces if she failed to comply with his demands or if she told anyone.  Appellant called Jane Doe 3 the day after he assaulted her and tauntingly asked if she was still a virgin.  Appellant did not show any remorse for his actions.  The basis for the court's decision is clear on the record.

{¶27} Appellant's sole assignment of error is overruled.

{¶28} The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Wise, John, J. concur