{¶ 1} Defendant Kimberly Loyer appeals her drug possession conviction based on the court's denying her motion to suppress evidence. After reviewing the facts of the case and pertinent law, we affirm.
 I {¶ 2} On September 21, 2005, Independence police officers noticed a vehicle with three people in it turn into the parking lot of the Comfort Inn. Police were patrolling the area as a result of recent complaints of automobile break-ins and thefts. As the vehicle in question turned into the hotel parking lot, the front-seat passenger saw the police and slouched down to the point where the police could no longer see him. At this time, the police officers suspected the passenger was attempting to conceal either himself or a particular object. The officers pulled into the hotel parking lot and found the vehicle in the rear of the parking lot with a female driver behind the wheel. The two male passengers were nowhere in sight.
 {¶ 3} After several minutes, the officers approached the vehicle and questioned the driver, who identified herself and stated she was there to drop off the two men to visit some friends. Shortly after this, the two males exited the hotel and walked toward the car. The police officers questioned the two men individually. One man appeared very nervous, and the other man appeared to be under the influence of drugs, because he was nervous, sweaty and had pinpoint pupils. The officers confirmed that the men's stories did not match. Eventually, the men admitted to *Page 4 
visiting Robert Jarrells (Jarrells) in room 112. A pat-down search revealed $2,100 in cash in one man's pocket.
 {¶ 4} The police officers then went to room 112, where Jarrells answered the door and consented to the officers entering the room, which was registered in his name. Inside the room, officers found appellant and another person. Officers also found the following in plain view: several baggies containing a white substance, bank-issued money wrappers, and several metal pushrods. Police asked Jarrells if he had any drugs on his person. Jarrells voluntarily produced 12 baggies containing a rock-type substance and cash. Another officer asked appellant if she knew what the metal object on the bed was. Appellant responded that it was a pushrod. The officer then asked her if she had any drugs on her person. Appellant voluntarily emptied her pockets, one of which contained lighters, crack-cocaine rocks, and a crack-cocaine pipe. Additionally, the police found more drugs and more than $20,000 cash in the drawer of the nightstand in the hotel room.
 {¶ 5} On November 17, 2005, appellant was charged with two counts of drug possession in violation of R.C. 2925.11, one count of drug trafficking in violation of R.C. 2925.03, and one count of possessing criminal tools in violation of R.C. 2923.24. On January 31, 2006, the court denied appellant's motion to suppress the evidence recovered in the hotel room, and on February 14, 2006, the case proceeded to trial. On February 16, 2006, the jury found appellant guilty of both counts of drug *Page 5 
possession, and the court later sentenced appellant to one year of community control sanctions.
 II {¶ 6} In her sole assignment of error, appellant argues that "the court erred in denying the motion to suppress the evidence." Specifically, appellant argues the following: a) the initial search and seizure of the two males in the parking lot was unconstitutional; b) the search and seizure, as well as the investigation, of hotel room 112 was unconstitutional; and c) any statements she made in the hotel room before the police Mirandized her were inadmissible.
 "Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. An appellate court is to accept the trial court's factual findings unless they are clearly erroneous. We are therefore required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. The application of the law to those facts, however, is subject to de novo review."
State v. Polk, Cuyahoga App. No. 84361, 2005-Ohio-774 at ¶ 2 (internal citations omitted).
 {¶ 7} Warrantless searches are presumptively unconstitutional under the Fourth Amendment to the United States Constitution. Payton v. NewYork (1980), 445 U.S. 573, 586. However, to claim Fourth Amendment protection, a defendant must show that he or she personally has a reasonable expectation of privacy in the place searched. See State v.Williams (1995), 73 Ohio St.3d 153. Given this, we note that appellant has no standing to assert the Fourth Amendment rights of the two *Page 6 
males in the hotel parking lot. However, we will analyze police activity in the hotel room as it applied to appellant on the day in question.
 {¶ 8} Hotel room occupants have a reasonable expectation of privacy under the Fourth Amendment. Stoner v. California (1964), 376 U.S. 483. Ohio law is conflicting regarding the scope of the meaning of "hotel room occupants." It is clear that the person in whose name the room is registered has a reasonable expectation of privacy. Id. However, it is unclear whether nonregistered guests fall under the same protective umbrella. Compare, State v. Bustillos-Gonzales, Stark App. No. 2004-CA-00130, 2005-Ohio-2307 (affirming a motion to suppress evidence under circumstances in which neither codefendant was the person who rented the hotel room where the search took place) with State v.Moore, Montgomery App. No. 20198, 2004-Ohio-3783 (holding that a defendant who "had neither rented the room, paid for the room, nor had access to the room with a key or a key card," did not have a reasonable expectation of privacy, and thus, did not have standing to assertFourth Amendment rights) (relying on State v. Coleman (1997),118 Ohio App.3d 522). Given the murky state of the law, we will assume arguendo that appellant does have standing to object to the warrantless search of the hotel room in the instant case.
 {¶ 9} During a suppression hearing regarding evidence found in a warrantless search of a premises, the state must prove that one of the few exceptions to the search warrant requirement applies to the facts of the case at hand. State v. Jedrick (May 9, 1991), Cuyahoga App. No. 60276, citing Coolidge v. New Hampshire (1971), *Page 7 403 U.S. 443. One recognized exception to the warrant requirement is a search conducted based on consent. Schneckloth v. Bustamonte (1973),412 U.S. 218. The state must prove that the consent was freely and voluntarily given, as demonstrated by a totality of the circumstances. Id. See, also, State v. Kruger, Summit App. No. 20830, 2002-Ohio-1750 (holding that consent "constitutes a waiver of an individual'sFourth Amendment rights and therefore requires more than a mere expression of approval"). Ohio courts recognize six factors to review when determining whether a defendant's consent to search was given voluntarily:
 1) whether the defendant's custodial status was voluntary;
 2) whether coercive police procedures were used;
 3) the extent and level of the defendant's cooperation with the police;
 4) the defendant's awareness of his or her right to refuse consent;
 5) the defendant's education and intelligence;
 6) the defendant's belief that no incriminating evidence will be found.
State v. Webb (Jan. 28, 2000), Montgomery App. No. 17676.
 {¶ 10} In the instant case, appellant argues that there was no evidence that Jarrells knew he had a right to refuse consent. Appellant further argues that Jarrells "was so stoned that any consent to enter was not intelligently made." A review of the transcript of the suppression hearing reveals that Independence police officer Richard Paine (Paine) testified as follows:
 "Q: And did you, in fact, respond to room 112? *Page 8 
 A: Yes, sir.
 Q: And what happened next?
 A: We knocked on the door, Robert Jarrells answered the door, we asked if we could come and speak with him and he allowed us into the room to come and speak with him.
 Q: The person that answered the door identified himself as who?
 A: Let me make sure I'm saying it right. Robert Jarrells.
 Q: And was he able to answer whether or not he was the person who had rented the room?
 A: He stated he was, sir.
 Q: And what happened next?
 A: He produced identification, I'm not sure if it was a State ID card or driver's license, stating that his name was Robert Jarrells, that he did rent the room.
 Q: And did there come a time when you asked for permission to enter?
 A: Yes, sir.
 Q: And what happened?
 A: He let us in the room. And while we were in the room, we observed several items that were in the room.
 Q: When you said he let you in the room, did he verbally consent?
 A: Yes."
 {¶ 11} A review of the record shows that Dan Anders, another police officer on the scene, testified regarding Jarrells' consent to search, and his testimony was *Page 9 
substantially similar to Paine's testimony. Appellant's argument that Jarrells was not aware of his right to refuse consent is not well taken. "A suspect may give a valid consent to a search even if the suspect is not informed that he or she has a right to refuse to consent." State v.Morris (1988), 48 Ohio App.3d 137, 139. In the instant case, the police knocked on Jarrells' hotel door, Jarrells opened the door, the officers asked for permission to enter the room, and Jarrells granted them permission. Paine testified that Jarrells was "sweating profusely, his eyes were really big, and he was very jittery also, kept looking around, kept putting his hands in his pockets while I was speaking with him." This observation was made after Jarrells consented to the search and, although unclear from the record, it seems as if Paine was establishing that Jarrells was under the influence of drugs at the time. Although we find this fact material, the notion that being under the influence of drugs, in and of itself, renders voluntary consent an impossibility is unsupported by Ohio law.
 {¶ 12} There is nothing to suggest that Jarrells' consent was not freely or voluntarily given and the officers' initial entry into the hotel room was unconstitutional. It is undisputed that after the entry, narcotics and drug paraphernalia were in plain view in the hotel room, and these items are subject to seizure and may be introduced into evidence. Harris v. United States (1968), 390 U.S. 234. See, also,State v. West, Cuyahoga App. No. 87234, 2006-Ohio-4267. Therefore, appellant's argument that further investigation in the hotel room was unconstitutional fails outright. *Page 10 
 {¶ 13} Appellant next argues that her motion to suppress should have been granted under the United States Supreme Court's "fruit of the poisonous tree" theory found in Silverthorne Lumber Co. v.United States (1920), 251 U.S. 385. However, this argument is moot because Jarrells voluntarily consented to the search of his hotel room.
 {¶ 14} Appellant's final subargument is that the police did not read her Miranda rights until after she incriminated herself. Specifically, appellant argues that, without being Mirandized, the police asked her what a metal object was used for and whether she had any drugs on her person. Appellant answered by first explaining that the metal object was used for packing crack cocaine into a pipe, and then she pulled lighters, crack-cocaine rocks, and a crack-cocaine pipe from her front right pocket.
 {¶ 15} "Miranda provides that the prosecution may not admit statements from the defendant that are obtained through custodialinterrogation unless the defendant has been fully advised of his rights. Custodial interrogation is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." State v.Durden (Feb. 10, 1994), Cuyahoga App. No. 64693 (citing Miranda v.Arizona (1966), 384 U.S. 435).
 {¶ 16} The Miranda rule against self-incrimination does not apply to voluntary statements. State v. Phillips (1991), 75 Ohio App.3d 785. Voluntary statements by a defendant to the police are considered admissible in court because "Miranda protects defendants against government coercion leading them to surrender rights protected *Page 11 
by the Fifth Amendment; it goes no further than that." Colorado v.Connelly (1986), 479 U.S. 157, 170. See, also, State v.Winterbotham, Greene App. No. 05CA100, 2006-Ohio-3989 (holding that in determining whether a statement was voluntarily given in light ofMiranda, the "analysis is whether or not the accused's statement was the product of police overreaching"). Additionally, the United States Supreme Court has held that: "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus.
 {¶ 17} In the instant case, there is no evidence that the police were interrogating appellant when she identified a push pipe and relinquished the contraband from her pocket. Furthermore, nothing suggests that police coercion was present in appellant's situation. See Black's Law Dictionary (7th Ed.) 252 (defining coercion as "[c]ompulsion by physical force or threat of physical force"). The only statement appellant made before being Mirandized explained that a metal object found on the bed was used for packing crack cocaine into a pipe. Appellant gave this statement voluntarily after the officer's first, and only, inquiry into the subject. Given the lack of interrogation, appellant's argument that her statement was inadmissible at the suppression hearing fails. *Page 12 
 {¶ 18} Accordingly, we find that the court did not err by denying appellant's motion to suppress, and her sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 COLLEEN CONWAY COONEY, P.J., and ANN DYKE, J., CONCUR *Page 1