[Cite as *State v. Burton*, 2014-Ohio-3506.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI   COUNTY

STATE OF OHIO                                       :
                                                :     Appellate Case No. 2013-CA-38
     Plaintiff-Appellee            :
                                                :     Trial Court Case No. 13-CR-07
v.                                                  :
                                                :
JOSEPH D. BURTON                                    :     (Criminal Appeal from
                                                :      Common Pleas Court)
     Defendant-Appellant           :
                                                :

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of August, 2014.

. . . . . . . . . . .

ANTHONY E. KENDELL, by JANNA L. PARKER, Atty. Reg. #0075261, Miami County Prosecutor's Office, 201 West Main Street, Troy, Ohio 45373
     Attorneys for Plaintiff-Appellee

STEVEN R. LAYMAN, Atty. Reg. #0034124, Miami County Public Defender's Office, Old Courthouse, Troy, Ohio 45373
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}   Joseph D. Burton appeals from his conviction and sentence on four counts of

aggravated drug possession and one count of failure to verify his address.

{¶ 2}   Burton advances two assignments of error. First, he challenges the legal sufficiency and manifest weight of the evidence to support the drug-possession convictions. Second, he contends the trial court erred in its ruling on the admissibility of recorded telephone conversations.

{¶ 3}   The State's evidence at trial established that Trooper Joshua Weaver stopped a car driven by Lindsey Daniels for failure to dim her headlights. The stop occurred in the early morning hours of July 21, 2012 as Daniels was driving to Buckeye Lake to meet Burton, her former boyfriend, at a music festival. Because Daniels lacked a valid driver's license and was traveling alone, Trooper Weaver had her lock the car and leave it on the roadside. During the stop, a K-9 unit arrived and alerted on the car. A search of Daniels and the vehicle, including the glove box, resulted in the discovery of only a few small bits of marijuana. Trooper Weaver did not cite Daniels for the marijuana. He cited her only for driving with a suspended license and failing to dim her headlights. He then drove her to a gas station near the festival, where Burton picked her up.

{¶ 4}   On July 22, 2012, Daniels and Burton retrieved the car, an Eagle Talon, on the roadside. Daniels drove them back to Troy after briefly stopping at a Wal-Mart store along the way. Burton waited in the car while Daniels went inside to buy him a phone card. Daniels then dropped Burton off at a residence he shared with Jennifer Davis. Daniels proceeded to her own home, which she shared with her young child and the child's father, Wagner Couch. As Daniels was pulling into her driveway, Burton called her and explained that he had left a bag of drugs in her car's glove box. Daniels opened the glove box and saw the drugs. They agreed to meet the following day so Burton could retrieve the bag. Daniels left the drugs in the glove box and went

inside her house.

{¶ 5}   On July 23, 2012, sheriff's deputy Brad Kline was dispatched to Daniels' residence on a missing-person complaint. Deputy Kline was met there by Daniels' mother, who was concerned because Daniels had not shown up for work and had not been in contact with anyone. Daniels' mother identified the Eagle Talon in the driveway as the car Daniels drove. Deputy Kline knocked on the door of Daniels' home and received no response. He checked her car and found the passenger-side door unlocked. He opened the door and looked inside the car, seeking clues as to her whereabouts. Upon opening the glove box, he found the bag of drugs. Daniels' landlord then arrived with keys to the house. At that point, Daniels came outside and spoke to police, eventually telling them the drugs belonged to Burton.

{¶ 6}   Later that day, Daniels spoke to Burton on the telephone and told him the drugs were "gone." She pretended not to know what had happened to the bag and did not mention police involvement. Daniels subsequently recorded two additional phone calls from Burton. She did so by talking to him on a speaker phone while having Couch record the conversation using another phone. Daniels recognized the phone number calling her as Burton's. She also recognized Burton's voice on the calls. During the conversations, Burton told Daniels that "it was in the glove box and you know it" and asked why she would "leave it in there." He also accused Daniels or Couch of stealing "it" or "them." He told Daniels, "you'll be able to afford rent now," "why would you leave them in the car, why would you do this to me," "you shouldn't have left them in there, I told you that, I called you and told you they were in the car, from Jenn's phone," "if you don't find them, then I'm broke, I don't have a dime to my name without them," "now I have nothing," and "that was all my profit[.]" Daniels testified that the references to "it" and

"them" were non-specific references to the bag of drugs. She explained that neither she nor Burton explicitly would mention drugs over the telephone. Police sergeant Jason Moore confirmed that, in his experience, people discussing drugs are unlikely to be specific in their conversations. Finally, forensic chemist Brooke Ehlers identified the various drugs found in the bag and their quantities.

{¶ 7}    Based on the evidence presented, the jury found Burton guilty of the four drug-related charges set forth above. He separately pled no contest to the failure-to-verify charge, which is not at issue on appeal. The trial court imposed an aggregate six-year prison term. This appeal followed.

{¶ 8}    In his first assignment of error, Burton challenges the legal sufficiency and manifest weight of the evidence to sustain his aggravated-drug-possession convictions. He stresses that the State's case rested on Daniels' testimony and the recorded phone conversations. He suggests that her testimony lacked credibility because they had undergone "an acrimonious break-up" and because she believed his friends had stolen items from her home. Burton suggests that the drugs belonged to Daniels and that she falsely claimed they were his. He also contends the State failed to "investigate" the phone calls by seeking phone records or otherwise connecting him to the calls. Finally, he claims the evidence does not establish his possession of the drugs.

{¶ 9}    When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn,* 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if

believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 10} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} With the foregoing standards in mind, we conclude that Burton's convictions are supported by legally sufficient evidence and are not against the weight of the evidence. Each of the drug-related convictions alleged a violation of R.C. 2925.11(A), which provides: "No person shall knowingly obtain, possess, or use a controlled substance[.]" The only real issue below was whether Burton had possessed the bag of drugs found in the glove box of Daniels' car. The trial court instructed the jury as follows with regard to possession:

> "Possess" means having control over a thing or substance, but may not be
> inferred solely from mere access to the thing or substance through ownership or

occupation of the premises upon which the thing or substance is found. Possession may be actual possession or constructive possession. A person has "actual possession" when he has immediate and exclusive control over a thing, such as having the object on one's person.

"Constructive possession" of an object exists when an individual has knowledge of the presence of the object and has the power and intention to exercise control over it, even though it may not be in the person's immediate physical possession. Two or more persons may have joint constructive possession of the same object. The crucial issue is not whether a person had actual physical contact with the object, but whether the person was capable of knowingly exercising dominion and control over it, either directly or through another person.

(Trial Tr. Vol. II at 193-194). {¶ 12 } Upon review, we believe the record contains legally sufficient evidence to support a finding that Burton knowingly possessed the drugs at issue, and such a finding is not against the weight of the evidence. The record reflects that no drugs were in the glove box when Daniels and Burton retrieved her locked car alongside the road. Police had searched the car at the time of the traffic stop, and no drugs were found. Daniels then drove the car back to Troy. On the way, she went inside a Wal-Mart store while Burton waited in the car, giving him an opportunity to place the drugs in the glove box without her knowledge. She then dropped him off at his house. When she returned to her own home, he called and told her he had left a bag of drugs in the glove box. Daniels checked and confirmed his claim. Based on this evidence, the jury reasonably could have found that Burton had at least constructive possession of the drugs. Indeed, prior to advising Daniels of their presence, he was the only person who knew

of their existence and had the power to exercise control over them.

**{¶ 13}** As for Burton's challenge to Daniels' credibility, we see no basis for reversal. "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *State v. Smith,* 2d Dist. Montgomery No. 25462, 2013-Ohio-5345, ¶ 15. "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *Id.* at ¶ 16. Here the jury reasonably could have believed Daniels' testimony that the drugs belonged to Burton. Such a conclusion is supported by the recorded telephone conversations in which Burton accused Daniels of stealing "it" or "them" and leaving him with nothing.

**{¶ 14}** Finally, the State's failure to "investigate" the phone calls by seeking phone records does not justify reversal. Daniels testified that the recorded calls came from Burton's telephone number, and she identified his voice on the calls.

**{¶ 15}** Viewing the evidence in a light most favorable to the prosecution, the State presented legally sufficient evidence to support the jury's guilty verdict on the drug-related charges. This also is not an exceptional case in which the evidence weighs heavily against Burton's convictions. The first assignment of error is overruled.

**{¶ 16}** In his second assignment of error, Burton contends the trial court violated Evid.R. 901 when it allowed the jury to hear the recorded phone conversations and admitted them into evidence. Burton claims no effort was made to authenticate the recordings because "no phone records were requested or collected to corroborate Ms. Daniels' allegations."

**{¶ 17}** Burton's argument lacks merit. Under Evid.R. 901(A), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence

sufficient to support a finding that the matter in question is what the proponent claims." Using telephone records is one way to authenticate a telephone conversation. Evid.R. 901(B)(6). Such authentication also can occur, however, through the testimony of a witness with knowledge or by voice identification. Evid.R. 901(B)(1) and (5). Here Daniels testified that the recordings of the two telephone calls were what she purported them to be. She explained how the recordings were made, she identified the phone number calling her as Burton's, and she testified that the recordings were accurate and complete. In addition, Daniels testified that she was familiar with Burton's voice and identified the voice on the recordings as his. We have no doubt that Daniels' testimony satisfied the authentication standards of Evid.R. 901. The second assignment of error is overruled.

{¶ 18}   The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

Anthony E. Kendell
Steven R. Layman
Hon. Christopher Gee