**[Cite as *State v. George*, 2014-Ohio-4853.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

TIMOTHY GEORGE

      Defendant-Appellant


Appellate Case No.    25945

Trial Court Case No.   2013-CR-0464


(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 31st day of October, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. No. 0089541, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

MICHAEL T. COLUMBUS, Atty. Reg. No. 0076799, 130 West Second Street, Suite 2103, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-appellant, Timothy E. George, appeals from his conviction in the Montgomery County Court of Common Pleas following a jury finding him guilty of carrying a concealed weapon, improperly handling a firearm in a motor vehicle, and aggravated possession of drugs.   George alleges that the trial court committed reversible error in overruling his motion to suppress evidence of contraband found in his vehicle and on his person. Secondly, George says that his conviction for possession of methamphetamine should be reversed for insufficiency of evidence.   Finally, George contends that his conviction for carrying a concealed weapon is against the manifest weight of the evidence.

{¶ 2}    We conclude the trial court did not err in overruling George's motion to suppress because the initial stop of the vehicle was based upon sufficient reasonable, articulable suspicion and George's consent to search the vehicle was freely and voluntarily given.   Additionally, the conviction for possession of the methamphetamine at issue was supported by sufficient evidence and was not against the manifest weight of the evidence. Furthermore, the conviction for carrying a concealed weapon was not against the manifest weight of the evidence because the handgun was located in the back of a recessed shelf of the center console of George's truck and was so situated as not to be discernible under ordinary observation by the deputies who were in close proximity to George and interacted with him in a meaningful way.   For the reasons set forth below the judgment of the trial court will be affirmed.

### Course of Proceedings

{¶ 3}    On March 21, 2013, George was indicted by the Montgomery County Grand

Jury. The indictment charged George with one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a fourth-degree felony; one count of improperly handling of a firearm in a motor vehicle in violation of R.C. 2925.61(B), a fourth-degree felony; one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a third-degree felony; and one count of possession of marijuana in violation of R.C. 2925.11(A), a minor misdemeanor.

{¶ 4} Following the indictment, George filed a motion to suppress evidence seized as a result of his February 13, 2013 encounter with deputies of the Montgomery County Sheriff's office. After a hearing, the trial court overruled the motion to suppress and the merit of the case was decided by a jury trial. The possession of marijuana charge was dismissed by the State and the jury found George guilty on the remaining three counts. The trial court sentenced George to community control sanctions, a six month license suspension, and a mandatory $5,000 fine. George thereafter appealed from his conviction and sentence, raising four assignments of error for this court's review.

**Facts**

{¶ 5} On February 8, 2013, Deputy John Miller was patrolling Harrison Township, Beat 14, as he had been assigned to do for the past six years. Miller had been in law enforcement for eleven and a half years, and assigned to road patrol for the past eight and a half years. Miller knew the block to be a high crime area frequented by prostitution, drugs, theft, robbery, and homicide. At the time, Miller had experience with twenty-five to thirty drug crimes from that specific block in the past six months.

{¶ 6} During his patrols, Deputy Miller normally passed by Flamingo's Bar, a closed-down, exotic dance club located at 7031 North Dixie Drive, ten to twenty times a day. On

the afternoon of February 8, 2013, he noticed a red Ford Mustang and a black S-10 truck parked in the rear of Flamingo's parking lot near the tree line and a fenced in Vectren gas substation. This caught Miller's attention because he had never seen non-official vehicles parked there before.

{¶ 7} Miller observed that the vehicles were located in the back parking lot of Flamingo's, several hundred feet off the roadway. In addition, the vehicles were parked door to door with their front ends facing in opposite directions. In Miller's experience such positioning was common in facilitating drug transactions in Harrison Township, as it allowed the participants to quickly leave the scene. Miller also noticed that the vehicles were in an area beyond no trespassing signs that were posted at Flamingo's. In order to determine if the people associated with the vehicles were trespassing, Miller decided he needed to make contact with them. Accordingly, Miller radioed the dispatcher about the situation.

{¶ 8} As Miller approached the vehicles, he observed that the Mustang was empty and there were two occupants in the truck. The truck moved and made a U-turn. Miller found this noteworthy because such conduct is inconsistent with motorists who are having mechanical problems. Miller activated his overhead lights and pulled directly in front of the truck, which was headed in his direction toward the exit.

{¶ 9} Miller approached the truck and asked the occupants to lift up their hands so he could see them. The occupants, a male driver and a female passenger, complied with his request. As Miller approached the passenger side he acknowledged the driver, Timothy George, and spoke with the female passenger. Miller introduced himself and explained why he stopped the vehicle. He then asked the pair why they were on private property.

{¶ 10} During this encounter, Miller observed that the female was nervous, could not sit

still, fidgeted, and looked back and forth. She told Miller that her car had overheated, which prompted Miller to ask why the vehicles were so far off the roadway if her car had in fact overheated. Miller also observed that George looked nervous as he explained that they were actually parked off the road because he and the female passenger were "courting." Suppression Hearing Trans. (May 22, 2013), p. 20. Because they gave conflicting stories, Miller asked for their personal information.

{¶ 11} Meanwhile, Deputy Craig Eaton arrived to assist Miller. He checked to see if there were any occupants in the Mustang. After he found none, he ran the Mustang's license plate information. He learned the vehicle was registered to Heather Emory. Eaton recalled that he had previous dealings with Emory and that she had a drug history. Specifically, a confidential informant had connected Emory to methamphetamine production in Eldorado Plat. Eaton provided Miller with this information.

{¶ 12} After Miller ascertained that George and Emory had no outstanding warrants, he asked them if they had any weapons or anything illegal in the truck. They both said "no." *Id*. Miller then asked George in a conversational tone if he could have consent to search the truck. George responded, "Yeah, I guess." *Id*. at 21. Miller then asked the occupants to step out of the vehicle.

{¶ 13} As the occupants exited the vehicle, Deputy Eaton performed a quick weapons pat-down search on George, who was wearing a hooded sweatshirt. Thereafter, Eaton asked George to stand behind the truck and Eaton began to search the vehicle. As Eaton searched the passenger compartment of the truck, Miller conversed with Emory and asked her if she would give him consent to search her purse. Emory consented and told Miller that her purse might contain a marijuana pipe.

{¶ 14}   While searching the truck, Eaton observed a .22 caliber revolver in a holster located in the back of the truck's dashboard shelf.   Eaton was not able to observe the firearm until he was inside the passenger compartment.   The firearm was loaded and operable.

{¶ 15}   Eaton yelled to Miller that there was a gun inside the truck.   Miller then drew his weapon and ordered the couple to the ground.   George said that he forgot that the gun was in the truck and began to explain that he was in the process of obtaining a permit.   After the pair were handcuffed, George told the deputies that he had not yet obtained a permit.   In addition, the deputies then found the pipe that Emory had previously mentioned.

{¶ 16}   Thereafter, Deputy Eaton searched George incident to arrest and found a small bag on his person that contained .82 grams of crystal methamphetamine.   Eaton then inventoried the passenger compartment of the truck and found a larger bag containing 3.52 grams of the same drug in the breast pocket of a man's coat that was tucked between the driver and passenger seat.

### First Assignment of Error

{¶ 17}   George's First Assignment of error is as follows:

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY FAILING TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF AN ILLEGAL STOP OF APPELLANT'S VEHICLE?

{¶ 18}   Under this assignment of error, George contends the trial court erred in denying his motion to suppress on grounds that the deputies did not have a reasonable suspicion of criminal activity to justify an investigatory stop of his vehicle.   We disagree.

{¶ 19}   As a preliminary matter, we note that when considering a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of

fact and evaluate the credibility of the witnesses.' " *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). "The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record." *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App. 3d 586, 639 N.E.2d 498 (2d Dist.1994). "Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied." *Id.*

{¶ 20} With regards to investigative stops, "[a] police officer may stop and detain a motorist when he has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry*." (Citations omitted.) *State v. Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554, ¶ 14. "We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances 'through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold.' " *Id.*, quoting *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14.

{¶ 21} In determining what is reasonable under the circumstances, we may generally consider such factors as the apparent nervousness or reaction of the suspect, that the stop occurred in a high crime area, the experience of the officer, that the officer knew that drug transactions took place in the area, and that the position or activity of the participants were consistent with that typically used to transact in drugs. *State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988).

{¶ 22} Here, Deputy Miller had reasonable and articulable suspicion that the occupants of the vehicles were trespassing on the property of a closed exotic dance club that had a "no trespassing" sign posted. The justification for the stop increased when the truck containing George and Emory moved towards the exit as Miller approached them in his cruiser.

{¶ 23} Also, from Miller's experience, the opposite, door to door positions of the parked vehicles were consistent with the manner of drug trafficking in that area. Miller testified that he has been a law enforcement officer for eleven and a half years, has patrolled that beat for the past six years, and knew the area well. He testified that the location where he stopped George and Emory is a high crime area frequented by prostitution, drugs, theft, robbery, and homicide. During the six month period immediately prior to the stop, Miller had dealt with twenty-five to thirty drug crimes in that block. Furthermore, Miller indicated that he passed by the Flamingo's parking lot ten to twenty times a day and had never seen a non-official vehicle at that remote location. The record also indicates that both George and Emory were nervous upon being stopped and that they told conflicting stories as to why they were parked far off the roadway.

{¶ 24} Based on the foregoing, we find that Deputy Miller had a reasonable articulable suspicion of criminal activity to justify the investigative stop. Accordingly, George's First Assignment of Error is overruled.

## Second Assignment of Error

{¶ 25} George's Second Assignment of Error is as follows:

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY FAILING TO

SUPPRESS EVIDENCE OBTAINED AS A RESULT OF A SEARCH OF

APPELLANT'S VEHICLE ABSENT APPELLANT'S VOLUNTARY

CONSENT?

{¶ 26}   Under this assignment of error, George contends the trial court erred in denying his motion to suppress on grounds that he did not voluntarily consent to the search of his vehicle. We disagree.

{¶ 27}   Warrantless searches are per se unreasonable under the Fourth Amendment subject to specifically established and well delineated exceptions. *State v. Black*, 2d Dist. Montgomery No. 23524, 2010-Ohio-2916, ¶ 33.   Since the deputies did not obtain a search warrant to search George's truck, the State had the burden of demonstrating that the search falls under one of these exceptions.

{¶ 28}   Consent is an exception to the warrant requirement, and requires the State to show by clear and positive evidence that the consent was freely and voluntarily given. *Black* at ¶ 34.   Whether a consent to search was voluntary or was the product of duress or coercion, express or implied,  is a question of fact to be determined from the totality of all of the facts and circumstances.   *Ohio v. Robinette*, 519 U.S.33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).   Six factors are generally considered in Ohio to determine this question:

1) whether the defendant's custodial status was voluntary;

2) whether coercive police procedures were used;

3) the extent and level of the defendant's cooperation;

4) the defendant's awareness of his or her right to refuse consent;

5) the defendant's education and intelligence;

6) the defendant's belief that no incriminating evidence would be found.

*Black* at  ¶ 35-41, quoting *State v. Loyer*, 8th Dist. Cuyahoga No. 87995, 2007-Ohio-716, ¶ 9. (Other citation omitted.)

{¶ 29}  The weight of the applicable factors favor the trial court's finding that George's consent was freely and voluntarily given.  George was lawfully and temporarily detained in a public area during daylight hours.  There was no evidence that coercive law enforcement procedures were used.  George was cooperative and immediately gave his consent to search after the first request.  Prior to the consent, he indicated to Deputy Miller that no weapons or illegal substances would be found in the truck.

{¶ 30}  There is no evidence indicating whether George knew he could decline consent.  However, the test for voluntariness is not subjective, but objective, and based on the totality of the facts and circumstances.  "[W]hile the knowledge of the right to refuse consent is one factor to be considered, it is not the sine qua non of a voluntary consent." (Citation omitted.)  *State v. Watts*, 2d Dist. Montgomery No. 21982, 2007-Ohio-2411, ¶ 17.  The facts here are similar to other cases where we have affirmed trial courts on this issue. *See, e.g., Id*.; *State v. Herron*, 2d Dist. Montgomery No. 25850, 2014-Ohio-3166;  *State v. Webb,* 2d Dist. Montgomery No. 17676, 2000 WL 84658   (Jan. 28, 2000).

{¶ 31}  We find that the totality of the facts and circumstances supports a finding that George's consent to search his vehicle was freely and voluntarily given. Accordingly, we overrule George's Second Assignment of Error.


**Third Assignment of Error**

{¶ 32}  George's Third Assignment of Error is as follows:

WAS   APPELLANT'S   CONVICTION   FOR   POSSESSION   OF METHAMPHETAMINE   WEIGHING   3.52   GRAMS   AGAINST   THE SUFFICIENCY OF THE EVIDENCE OR DID THE JURY LOSE ITS WAY?

{¶ 33}   Under his Third Assignment of Error, George contends that there was insufficient evidence to support the conviction concerning the larger quantity of methamphetamine found in the man's coat that was stuffed between the driver and front passenger seat in his truck.   George says that proof that he possessed the drug was lacking.   We again disagree.

{¶ 34}   When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law.   *State v. Hawn,* 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000).   "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."   *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 35}   Our analysis is different when reviewing a manifest-weight argument.   When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, with the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1977).   A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.)   *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 36}   " '[P]ossession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."  R.C. 2925.01(K).  In addition, R.C. 2901.21(D)(1) provides that "[p]ossession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."

{¶ 37}   We have interpreted these statutory definitions and enunciated the Ohio law on actual and constructive possession.   We approved a trial court jury instruction which stated that:

"Possess" means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found. Possession may be actual possession or constructive possession. A person has "actual possession" when he has immediate and exclusive control over a thing, such as having the object on one's person.

"Constructive possession" of an object exists when an individual has knowledge of the presence of the object and has the power and intention to exercise control over it, even though it may not be in the person's immediate physical possession. Two or more persons may have joint constructive possession of the same object. The crucial issue is not whether a person had actual physical contact with the object, but whether the person was capable of knowingly exercising dominion and control over it, either directly or through another person.

State v. Burton, 2d Dist. Miami No. 2013-CA-38, 2014-Ohio-3506, ¶ 11.

{¶ 38}   When applying these standards, we find that George's convictions are supported

by legally sufficient evidence and are not against the weight of the evidence. The State presented evidence that drugs in question were located in a man's coat next to the driver's seat in the truck that he was driving. The passenger, Emory, was a female and a small quantity of the same drug was found on George's person. Additionally, testimony was presented that both George and Emory appeared nervous when approached by Deputy Miller. Based upon this evidence, the jury reasonably could have found that George had either individual or joint constructive possession of the drugs found in the coat.

{¶ 39} Viewing the evidence in a light most favorable to the prosecution, the State presented legally sufficient evidence to support the jury's verdict on the larger quantity of methamphetamine found in the coat. This is also not an exceptional case in which the evidence weighs heavily against George's convictions. Accordingly, George's Third Assignment of Error is overruled.

**Fourth Assignment of Error**

{¶ 40} George's Fourth Assignment of Error is as follows:

APPELLANT'S CONVICTION FOR CARRYING A CONCEALED WEAPON

WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 41} Under this assignment of error, George contends his conviction for carrying a concealed weapon is against the manifest weight of the evidence, because the State failed to prove that he concealed his firearm.

{¶ 42} As discussed above, the relevant inquiry for a manifest weight challenge is whether, after reviewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt. *Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus.

**{¶ 43}** The elements of carrying a concealed weapon are: "No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: * * * A handgun other than a dangerous ordnance." R.C. 2923.12(A)(2). This court has described the test for concealment as follows:

> "A weapon is concealed if it is so situated as not to be discernible by ordinary observation by those near enough to see it were it not concealed, who would come into contact with the possessor in the usual associations of life; but that absolute invisibility is not required." * * * "[T]he evident purpose of R.C. 2923.12(A) is to ensure that anyone who comes into contact with a person who is armed with a deadly weapon will be aware of the fact that they are so armed. Thus aware, the individual can act with a heightened degree of prudence." * * * In other words, if "the weapon is so situated as not to be discernible by ordinary observation by a person coming into close enough proximity to the bearer of the weapon to interact with the bearer in any meaningful way, then the weapon is concealed for purposes of the statute. * * *."

*State v. Twinam*, 2d Dist., Montgomery No. 25153, 2013-Ohio-720, ¶ 28.

**{¶ 44}** We find that there was adequate evidence to support the conviction for carrying a concealed weapon. The State's evidence at trial established that Deputy Miller was not able to observe the handgun when he conversed with George through the window of George's truck. The handgun was also not observable to Deputy Eaton until he entered the inside of the truck. Only upon entering the truck was Eaton able to see the gun recessed in the back of the shelf of

the dashboard. As the State points out, the fact that George stated that he forgot the gun supports an inference that the gun was not observable to George when he was operating the truck. Therefore, the record indicates that the gun was so situated as to not be discernible by ordinary observation by a person in close proximity to George while interacting with him in a meaningful way. Accordingly, the concealment test is satisfied, and George's Fourth Assignment of Error is overruled.

{¶ 45} For the foregoing reasons we affirm the judgment of the trial court.

. . . . . . . . . . . .

FROELICH, P.J., concurs.

DONOVAN, J., concurring:

{¶ 46} In my view, the issue of consent in this case is not free from difficulty. In *United States v. Worley*, 1193 F.3d 380 (6th Cir. 1999), the defendant answered, "You've got the badge, I guess you can." The Sixth Circuit held that the response suggested nothing more than acquiescence to the police's request rather than knowing and voluntary consent. Thus, is George's "yeah I guess" in response to a request to search, sufficient for the State to meet its burden of clear and convincing evidence supporting a finding of consent?

{¶ 47} Indeed, "a search based on consent requires more than the mere expression of approval to the search." *United States v. Jones*, 641 F.2d 425, 429 (6th Cir. 1981), overruled on other grounds by *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), as recognized in *United States v. Hardin*, 539 F.3d 404, 412 (6th Cir. 2008).

{¶ 48} Consent is one exception to the warrant requirement, and requires the State to show by "'clear and positive' evidence that the consent was 'freely and voluntarily' given."

*State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988) (citations omitted). "A 'clear and positive' standard is not significantly different from the 'clear and convincing' standard of evidence, which is the amount of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations to be proved. It is an intermediate standard of proof, being more than a preponderance of the evidence and less than evidence beyond a reasonable doubt." *State v. Ingram*, 82 Ohio App.3d 341, 346, 612 N.E.2d 454 (2d Dist. 1992) (citations omitted).

{¶ 49} In order to be valid, consent cannot be the product of coercion. "'Consent' that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse." *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Furthermore, "the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

{¶ 50} In my view, this case is close because George responded "Yeah, I guess." Nevertheless, the trial judge did look beyond this questionable acquiescence and made the following findings regarding the totality of circumstances which are sufficient to establish that consent was given:

> The Court: Going into the issue of consent, I'm going to read further language from the *Sears* decision. Again, *Sears* being a case authored by Judge Grady, 2005-Ohio-3880, from the Montgomery County Court of Appeals. Going first to paragraph 34, I quote the following language from that decision:

Searches conducted outside the judicial process, by officers lacking a prior judicial warrant, are per se unreasonable, subject to a few specifically established exceptions. The burden is on the party seeking an exemption from the constitutional process to show the need for it. When the exemption on which the State relies involves consent, the State bears the burden to prove that consent was freely and voluntarily given, and that burden on the State is by clear and convincing evidence.

Then going to paragraphs 37 and 38 of the *Sears* decision I further quote Judge Grady as follows:

Whether consent is in fact voluntary or the product of duress or coercion, either express or implied, is a question of fact to be determined from the totality of the facts and circumstances. Knowledge of the right to refuse consent is not a prerequisite to establishing voluntary consent, but is a relevant factor to be taken into account. Consent to a search that is obtained by threat or force, or granted only in submission to a claim of lawful authority, is invalid.

Such "lawful authority" is an express or implied false claim by police that they can immediately proceed to make the search in any event.

A suspect's expression of consent to perform a warrantless search of his person is not involuntary because he calculates that it is in his best interests to consent. It is involuntary because it is coerced; that is, the product of compulsion arising from physical force or a threat of physical force.

Under this standard it is concluded that Mr. George's consent was, in fact, voluntary. It is initially noted that consent obtained – that the consent was obtained during a valid Terry stop, therefore during the time when the consent was obtained Mr. George was being legally detained.

It is secondly concluded that Mr. George, since he did not remember the weapon was in his truck, calculated that the search would be benign, and he further calculated that his cooperation could be to his benefit. The fact that this calculation was incorrect does not render his consent involuntary.

Therefore, I do conclude that the consent to the search of his S-10 pickup truck was, in fact, voluntary.

I also note that the consensual vehicle search led to the discovery of the weapon. At that point Mr. George was subject to arrest and a search of his person was conducted.

This search, though it may have occurred before Mr. Watson (sic) excuse me, before Mr. George was informed that he was under arrested (sic), constituted (sic) a custodial search sanctioned by the Fourth Amendment. Therefore the discovery of the weapon and the first quantity of drugs did not in any way violate the Fourth Amendment.

Leading in to the final issue, and that is, that which was found during the inventory search. The decision to tow Mr. George's vehicle occurred pursuant to the sheriff's department standard tow policy. Further, the inventory search of the vehicle was part and parcel of that same standard tow policy maintained by the Montgomery County Sheriff's Department. Therefore, the second

quantity of drugs found during the inventory search is not subject to suppression, and was, in fact, a discovery made consistent with the Fourth Amendment.

Therefore, I overrule in its entirety the Defendant's motion to suppress.

**{¶ 51}** In my view, absent these additional findings articulated by the trial court, George's argument would be well-taken.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck
April F. Campbell
Michael T. Columbus
Hon. Michael Tucker