[Cite as *State v. Chaney*, 2015-Ohio-5011.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                               :
                                            :
    Plaintiff-Appellee                  :     Appellate Case No. 26568
                                            :
v.                                          :     Trial Court Case No. 14-CR-2919
                                            :
JOHN M. CHANEY                              :     (Criminal Appeal from
                                            :      Common Pleas Court)
    Defendant-Appellant                 :
                                            :

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of December, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by CHRISTINA E. MAHY, Atty. Reg. No. 0092671, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

ADAM J. ARNOLD, Arnold & Arnold, Ltd., 120 West Second Street, Suite 1502, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} John Chaney appeals from his conviction for possession of less than five

grams of cocaine. The sole assignment of error alleges that the trial court erred by overruling his motion to suppress the cocaine — found, Chaney says, during an illegal search of his person. The trial court found the following to be the applicable facts.

{¶ 2} On a July afternoon, in 2014, Kettering Police Officer Amy Pedro was on patrol watching a particular home in the city. The home, a narcotics detective had said, was suspected of housing drug sales. Around 4:40 p.m., Officer Pedro saw a vehicle in front of the suspected drug house. She had not seen anyone enter or exit the vehicle, but she watched it pull away from the curb. She had not seen this vehicle before in the area, so she decided to follow it. At a nearby intersection, Officer Pedro saw the vehicle fail to make a proper stop at a red light. Based on this traffic violation, she stopped the vehicle. Before approaching the vehicle, Officer Pedro requested backup. It was her intent to ask the driver if she could search the vehicle.

{¶ 3} When Officer Pedro got to the driver's side of the vehicle, she asked the driver — Chaney — if he had any illegal substances on his person or if there were any illegal substances in the vehicle. Chaney said no. Officer Pedro then asked him if she could search the vehicle. Chaney readily consented. Chaney immediately began to open his door to exit the vehicle, but Officer Pedro told him to sit tight until backup arrived. Officer Pedro determined that Chaney had a valid driver's license and had no outstanding warrants. The vehicle that Chaney was driving belonged to his father. Chaney told Officer Pedro that he had been visiting a friend and that he was driving to West Milton, Ohio, to pick up his father. Chaney looked extremely nervous. Officer Pedro saw his hands trembling and a vein in his neck throbbing.

{¶ 4} When backup arrived, five to seven minutes after she made the request,

Officer Pedro asked Chaney to exit the vehicle, and he readily complied. Before searching the vehicle, she asked Chaney if she could search him, and Chaney agreed. This search was more than just a pat-down. Officer Pedro, based on Chaney's consent, conducted a search but she did not find anything. Then, while the backup officer watched Chaney, Officer Pedro searched the vehicle. She did not find anything there either.

{¶ 5} Experience had taught Officer Pedro that people often hide drugs in their shoes or socks. So after she finished searching the vehicle, Officer Pedro asked Chaney to remove his shoes. Chaney complied without hesitation. Officer Pedro saw a bulge on the inside of one of Chaney's socks and asked him what it was. Pulling his sock down, Chaney admitted that it was cocaine.

{¶ 6} These findings are based on Officer Pedro's suppression-hearing testimony, which the trial court found entirely credible. The court did not believe Chaney's testimony, which differed in places from Officer Pedro's. Based on her testimony, the trial court concluded that, while lawfully detained for the traffic violation, Chaney consented to remove his shoes. Chaney's consent was voluntarily given, concluded the trial court, and he had not merely submitted to a claim of lawful authority. Officer Pedro neither said or implied to Chaney that she would search his shoes even if he refused to consent. Chaney was very cooperative throughout the encounter. No coercive police tactics were used, and Officer Pedro, who the court found is not an intimidating presence, did not threaten Chaney. Another officer was present, said the court, but there is no indication that the officer was anything but a backup who stood beside Chaney during the vehicle search. Chaney is a person of reasonable intelligence, said the court, and he admitted that he was brought up to follow requests from police officers. In light of these facts, the trial court

overruled Chaney's motion to suppress the cocaine.

{¶ 7} The standard used to review a suppression ruling is familiar: "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 8} Chaney makes three principle contentions. First, he contends that the initial search of his person was not consensual but a *Terry* frisk. Second, Chaney contends that the frisk was unlawful, because Officer Pedro did not have reasonable, articulable suspicion that he was armed. And third, Chaney contends that the second search of his person was not consensual.

{¶ 9} "Consent is an exception to the warrant requirement, and requires the State to show by clear and positive evidence that the consent was freely and voluntarily given." (Citation omitted.) *State v. George*, 2d Dist. Montgomery No. 25945, 2014-Ohio-4853, ¶ 28. "Whether a consent to search was voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all of the facts and circumstances." *Id.*, citing *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Chaney points out that the evidence conflicts as to whether he consented to the first search of his person. While Officer Pedro testified that she asked for his consent, Chaney testified that she patted him down without saying anything.

Chaney also points out that Officer Pedro testified that she searched him "for officer safety reasons." (Tr. 14). Therefore, says Chaney, the trial court's conclusion that the search of his person was a full search based on consent is not supported by the evidence. Officer Pedro testified that she asked Chaney if she could search him and that he agreed, and we see no reason why the trial court should have believed Chaney's testimony over hers. Regardless of her motivation, the search was consensual. Thus the search was lawful — even without suspicion that Chaney was armed. Regardless, however, that part of the encounter did not lead to any evidence.

{¶ 10} In support of his third contention, Chaney argues that the second search was not consensual because it exceeded any consent that he may have given and was an investigative detention that unlawfully extended the duration of the traffic stop. We disagree.

{¶ 11} When Officer Pedro asked Chaney to remove his shoes, he had been lawfully detained; he was not under arrest; there was no coercion; he cooperated immediately and without any objection. In such circumstances, we and other courts have found voluntary consent. *E.g.*, *State v. Drumm*, 2015-Ohio-2176, 36 N.E.3d 769, ¶ 11-12 (2d Dist.) (concluding that the trial court erred by finding that the defendant did not voluntarily consent to remove his shoes); *State v. Hardin*, 2d Dist. Montgomery No. 21177, 2006-Ohio-3745, ¶ 21 (finding voluntary consent); *State v. Riggins*, 1st Dist. Hamilton No. C-030626, 2004-Ohio-4247, ¶ 23 (finding voluntary consent). Also, Officer Pedro asked Chaney to remove his shoes and socks before any traffic citation had been issued and within a short time after the vehicle search. "A police officer's request for consent to search a vehicle stopped for a traffic violation is valid if it is made, and voluntary

consent is obtained, during the period of time reasonably necessary to process the traffic citation; in other words, while the driver is lawfully detained for the traffic violation." (Citations omitted.) *State v. Watts*, 2d Dist. Montgomery No. 21982, 2007-Ohio-2411, ¶ 12. By complying with the request to remove his shoes and socks, Chaney in effect consented to continued detention.

{¶ 12} We cannot say the trial court erred by finding that Chaney consented to the search of his shoes and socks and therefore the court did not err by overruling the motion to suppress.

{¶ 13} The sole assignment of error is overruled.

{¶ 14} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FAIN, J., concurs.

FROELICH, P.J., dissenting:

{¶ 15} After it was seen parked in front of a suspected drug house, the Appellant's vehicle was stopped for a red light violation,

{¶ 16} The officer immediately called for back-up. The Appellant appeared very nervous, but had a calm conversation with the officer. The officer asked if the driver had anything illegal or dangerous in the car and asked for, and was granted, permission to search the car, but waited until the other cruiser arrived approximately five to seven minutes later.

{¶ 17} The Appellant then got out of his vehicle. One officer escorted the Appellant to the sidewalk and conducted a full search of his person; the other officer waited with the Appellant while the vehicle, including the trunk, was searched. Nothing

illegal or suspicious was discovered.

{¶ 18} Given the stop, two officers in two cruisers with emergency lights flashing, a full search of the Appellant and of the vehicle, and an officer next to the Appellant at all times, I would find that the removal of Appellant's socks and shoes, whether after a "request" or an "instruction" resulted from a mere submission to a claim of lawful authority. Whether the officers subjectively believed it was a request that Appellant could have refused[1] or whether Appellant subjectively believed he had no choice but to be searched, are potentially relevant, but not controlling on the question of free and voluntary consent. With the facts in this record, I would find that the Appellant's removal of his shoes and socks was mere acquiescence to a claim of lawful authority, and the drugs should have been suppressed.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Christina E. Mahy
Adam J. Arnold
Hon. Michael Tucker

---

[1] Would it be arguable that a refusal, in a true catch-22, would create a reasonable and articulable suspicion justifying a *Terry* pat down of the shoes and socks? *See, e.g.,* Strauss*, Reconstructing Consent*, 92 J. Crim. L. & Criminology 211, 253, fn. 151 (2002), and Chanenson, *Get The Facts, Jack! Empirical Research and the Changing Constitutional Landscape of Consent Searches*, 71 Tenn. L. Rev. 399, 410 et seq. (2004).